**B.V. OPTISCHE INDUSTRIE DE OUDE DELFT, Oldelft N.V., and Oldelft Corporation of America, Plaintiffs,**

v.

**HOLOGIC, INC. and the University of Rochester, Defendants.**

No. 95 Civ. 0539 (PKL).

United States District Court, S.D. New York.

Dec. 14, 1995.

Jones, Day, Reavis & Pogue, New York City (Thomas V. Heyman, of counsel) and Claire Ann Koegler, West Orange, New Jersey, for Plaintiffs.

Skadden, Arps, Slate, Meagher & Flom, New York City (Constance S. Huttner, of counsel), and Brown, Rudnick, Freed & Gesmer, Boston, Massachusetts (M. Frederick Pritzker, Marilyn D. Stempler, and James W. Stoll, of counsel), for Defendant Hologic, Inc.

Nixon, Hargrave, Devans & Doyle, Rochester, NY (David M. Schraver and Carolyn G. Nussbaum, Esq., of counsel), for Defendant the University of Rochester.

### OPINION AND ORDER

LEISURE, District Judge:

Plaintiffs allege defendants violated (1) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), *see* 18 U.S.C. §§ 1961–68, and (2) section 2 of the Sherman Act. *See* 15 U.S.C. § 2. In addition, plaintiffs seek a declaratory judgment, *see* 28 U.S.C. § 2201, that two United States patents origi-

nally obtained by defendant Hologic are invalid and unenforceable. Defendants, pursuant to Fed.R.Civ.P. 9(b) and Fed.R.Civ.P. 12(b)(6), move to dismiss the RICO and antitrust claims. In addition, defendants move to dismiss the request for a declaratory judgment pursuant to Fed.R.Civ.P. 12(b)(1). For the reasons stated below, defendants motion is granted in its entirety. The Court grants plaintiffs leave to replead all three claims.

## BACKGROUND

This dispute centers around competition between plaintiffs and defendants to develop a new technology used for chest X-rays, known as chest equalization radiography. This competition resulted in the issuance, by the United States Patent and Trademark Office (the "PTO"), of two patents to Hologic. The patents were issued on August 28, 1990. The first is U.S. Patent No. 4,953,189 (the " '189 Patent"). Application for the '189 Patent was filed with the PTO on November 15, 1985 by an inventor, "Bob" Shih–Ping Wang. The second patent is U.S. Patent No. 4,953,-192 (the " '192 Patent"). Application for this patent was filed with the PTO on September 13, 1988 by Dr. Donald B. Plewes, also an inventor, and at that time an employee of defendant the University of Rochester.

Plaintiffs state that in 1988 defendant Hologic entered into an agreement with Konica Corporation to develop an equalized radiography system to compete with plaintiffs' system. Plaintiffs also allege that, beginning in or around 1988, Hologic, in order to unfairly win this competition, created an enterprise consisting of: (1) at least one or more officers of Hologic; (2) Wang; (3) Plewes; and (4) Ivan S. Kavrukov, Esq., the patent attorney for defendants. Plaintiffs further allege that the University joined this enterprise in 1990 and supplanted Hologic as its primary instigator in 1992. The apparent purpose of this enterprise was to fraudulently obtain patents from the PTO for chest equalization radiography, and thereby block plaintiffs' efforts to enter the United States markets.

Hologic's alleged first step was to acquire Wang's pending application for the '189 Patent in June of 1988. By July of 1988, after deciding not to pursue the Wang application, Hologic entered into an agreement with the University for an exclusive license under several of Plewes's pending patent applications, including his application for the '192 Patent. At that time it is alleged that Plewes became a consultant to Hologic. Applications for the '189 and '192 Patents were both directed to an equalized radiography system using a segmented fan beam. Plaintiffs' still-pending patent application also describes an equalized radiography system using a segmented fan beam.

Hologic, after communications with Konica and Kavrukov in early 1989, was concerned that the Plewes's '192 Patent application was filed too late to pre-date plaintiff's application. Therefore, Hologic decided to obtain rights to the Wang '189 Patent application, and have Wang agree to name Plewes the inventor on a divisional application to the pending '189 Patent application. The purpose of this was to give Plewes the advantage of the earlier filing date and fuller disclosure of the '189 Patent application. Thereafter, Kavrukov, Plewes and Wang, apparently acting at the "behest" of Hologic and Rochester, allegedly participated in various fraudulent acts before the PTO, eventually resulting in the issuance of the '189 Patent and the '192 Patent. Plaintiffs assert that but for the fraudulent activity neither patent would have been issued.

Plaintiffs' alleged damage is the cost they incurred defending themselves in three patent enforcement proceedings. The first action was a proceeding before the International Trade Commission (the "ITC"). Hologic began this action by filing a complaint on January 22, 1991, and the ITC instituted an investigation on February 22, 1991. The second proceeding was a patent infringement action filed by Hologic in the Southern District of New York on January 23, 1991, served by mail on January 24, and received by plaintiffs on or before February 8, 1991. The final action is a currently pending interference before the PTO, which was originally provoked by plaintiffs in October of 1990, and formally instituted by the PTO on May 20, 1991. The interference is to determine which patent, among plaintiffs' pending patent application, the '189 and '192 Patents,

and the Wang-to-Plewes divisional application, may lawfully issue.

## DISCUSSION

### I. *Standard for a Motion to Dismiss*

 In deciding defendants' Rule 12(b)(6) motion to dismiss, the Court accepts as true the material facts alleged in the complaint and draws all reasonable inferences in plaintiffs' favor. *See Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir.1995) (citing *Hill v. City of New York*, 45 F.3d 653, 657 (2d Cir.1995)). A motion to dismiss must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

In their opposition to defendants' motion, plaintiffs filed a lengthy declaration from one of their counsel, voluminous exhibits in support of this declaration, including deposition testimony of Wang, Plewes and Kavrukov, and documents produced by defendants. Defendants request that the Court not consider these submissions. Plaintiffs, in their request to have the submissions considered, do not cite any legal authority.

 In deciding whether or not to consider these submissions, the Court must make several inquiries. First, in certain situations, when a party seeks to introduce "affidavits, depositions or other extraneous documents not set forth in the complaint for the court to consider on a Rule 12(b)(6) motion," *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991), conversion of the motion to a Rule 56 summary judgment motion may be appropriate. *See id.;* Fed.R.Civ.P. 12(b)(6). However, conversion is only appropriate when the parties should reasonably recognize the motion as one for summary judgment. *See Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 (2d Cir.1990). Because in this case it was the non-movant who offered the supplemental submissions, the movants could not have had adequate notice that this motion

might be treated as one for summary judgment. Therefore, conversion is inappropriate.

 Having concluded that the motion is properly a motion to dismiss under Rule 12(b)(6), it is still necessary to determine whether the Court should consider plaintiffs' submissions. Fed.R.Civ.P. 10(c) provides: "Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Relying on Fed. R.Civ.P. 10(c), the Court of Appeals for the Second Circuit has held that "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *See Cortec*, 949 F.2d at 47.

From review of this authority, the Court concludes that a clear and definite reference to extraneous submissions not attached to the complaint is necessary for a plaintiff to assure their consideration in a motion to dismiss. Such a requirement is necessary in order to insure that the parties have adequate notice of how the Court will treat such submissions. *See Krijn*, 896 F.2d at 689. Because plaintiffs fail to make such necessary references in their pleadings, the Court need not consider their submissions. *Cf. I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir.1991) (where plaintiff fails to incorporate by reference a prospectus integral to its complaint, defendant may submit it to court for consideration in a motion to dismiss). Nevertheless, as this Opinion will show, consideration of these submissions would not alter the Court's decision with respect to this motion.

### II. *Statute of Limitations*

 As a threshold matter, the Court finds that neither plaintiffs' RICO claim nor their Sherman Act claim is barred by the respective statutes of limitations governing these claims. While not provided for in the statute, the Supreme Court has held that the statute of limitations for a civil RICO claim is four years. *See Agency Holding Corp. v.*

*Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987). In *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1102 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 1643, 104 L.Ed.2d 158 (1989), the Second Circuit held that "each time a plaintiff suffers an injury caused by a violation of 18 U.S.C. § 1962, a cause of action to recover damages based on that injury accrues to plaintiff at the time he discovered or should have discovered the injury." *Id.; see Bingham v. Zolt,* 66 F.3d 553, 559–61 (2d Cir.1995). In this case, among plaintiffs' alleged injuries are legal fees paid to defend themselves in the district court and ITC proceedings, and to represent themselves in the PTO proceedings. While the defendants' complaints in the district court and ITC actions were filed more than four years before this action, they apparently were not served on plaintiffs until within the four year period. *See* Plaintiffs' Memorandum of Law in Opposition ("Pls.' Opp.") at 3. Because legal expenses defending these actions could not have begun to be incurred until receipt of the complaints, this action is timely. The Court also finds that alleged injuries suffered after the PTO instituted the interference proceedings are within RICO's statute of limitations.[1]

■ In this case the alleged Sherman Act injuries are the same as the RICO injuries— namely, plaintiffs' expenses in defending and representing themselves in the various legal proceedings. The statute of limitations for a Sherman Act § 2 claim is four years. *See* 15 U.S.C. § 15b. "A cause of action for violation of the antitrust laws ordinarily accrues as soon as there is an injury to competition." *Higgins v. New York Stock Exchange, Inc.,* 942 F.2d 829, 832 (2d Cir.1991). In *Zenith Radio Corp. v. Hazeltine Research,* 401 U.S. 321, 339, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971), the Supreme Court stated: "Thus, if a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues . . . ." While the *Zenith* case does not directly address this

issue, from the quoted language the Court concludes that the alleged antitrust injuries occurred at the same time as the alleged RICO injuries (i.e. when plaintiffs began to defend themselves in the district court and ITC proceedings, and represent themselves in the PTO interference). Therefore, the Sherman Act claim is not time-barred.

### III. *Waiver*

■ Defendants claim that plaintiffs waived their rights to any damages related to the prior legal actions by (1) a settlement agreement; and (2) a stipulation of dismissal in the district court action. Having reviewed both documents, the Court cannot conclude that plaintiffs can prove no set of facts establishing that expenses incurred in the ITC action were not waived for the purposes of the present litigation. Hologic asserts that the motion of dismissal before the ITC had attached to it the Stipulation of Discontinuance from the federal court action, and therefore precludes plaintiffs from seeking damages in this case based on the costs of the ITC defense. Even if the Stipulation of Discontinuance in the federal action does preclude an application for RICO and Sherman act damages based on the federal action (which the Court does not now decide), surely its attachment to a motion before the ITC cannot necessarily mandate such a result. The Court refuses to dismiss an action based on such a strained argument.

### IV. *The RICO Claim*

■ To establish a civil RICO claim, plaintiffs must plead (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Sedima, S.P.R.L. v. Imrex, Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Atlantic Gypsum Co. v. Lloyds Int'l Corp.,* 753 F.Supp. 505, 511 (S.D.N.Y.1990). For several reasons, the Court finds plaintiffs pleadings to be deficient, and therefore dismisses the RICO claim.[2]

---

1. The Court realizes that the PTO action was originally provoked by plaintiffs in 1990. However, because it was not instigated by the PTO until within the limitations period, if it is viewed as a RICO injury, it is not time-barred.

2. As a preliminary concern, the Court notes that plaintiffs do not state in their pleadings which subsections of § 1962 were violated. Indeed, plaintiffs' complaint does not refer to § 1962 at all. They simply state that their claim is under

## A. Predicate Acts

Mail fraud and wire fraud, *see* 18 U.S.C. §§ 1341 and 1343, are both predicate acts of racketeering activity for purposes of RICO. *See* 18 U.S.C. § 1961(1)(B). A baseline requirement to establishing a pattern of racketeering activity requires the commission within a ten year period of at least two predicate acts that violate laws listed in 18 U.S.C. § 1961(1). *See* 18 U.S.C. § 1961(5). In order to properly plead predicate acts of mail and wire fraud, plaintiffs must comply with the particularity requirements of Fed. R.Civ.P. 9(b). Rule 9(b) requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). While knowledge may be averred generally, the Second Circuit has held that plaintiffs must "plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *See O'Brien v. National Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991) (quoting *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990)).

To plead mail and wire fraud, plaintiffs must allege with particularity the contents of the communications, who was involved, where and when the communications took place, and explain how they were fraudulent. *See Mills v. Polar Molecular Corp,* 12 F.3d 1170, 1176 (2d Cir.1993); *Naso v. Park,* 850 F.Supp. 264, 274 (S.D.N.Y.1994); *Wellington Int'l Commerce Corp v. Retelny,* 727 F.Supp. 843, 846 (S.D.N.Y.1989) (contents of the mailings must be pleaded to satisfy requirements of 9(b)); *Azurite Corp., Ltd. v. Amster & Co.,* 730 F.Supp. 571, 577 (S.D.N.Y.1990) (Leisure, J.) ("Wire fraud is a separate act from mail fraud and must, itself, be pled with particularity."). If more than one defendant is charged with fraud, plaintiffs' complaint must specify with particularity each defendant's alleged participation in the fraud. *See Ouaknine v. MacFarlane,* 897 F.2d 75, 80 (2d Cir.1990); *Browning Ave. Realty Corp. v. Rosenshein,* 774 F.Supp. 129, 138 (S.D.N.Y.1991).

In this case, plaintiffs allege 36 violations of the mail and wire fraud statutes. The first 33 alleged violations surround defendants' filing of fraudulent patent applications with the PTO. Plaintiffs assert that this process resulted in thirty acts of mail fraud (mail correspondence with the PTO) and three acts of wire fraud (telephone conversations with the PTO).

For several reasons, the Court finds that plaintiffs' assertions regarding defendants' interactions with the PTO fail to plead mail or wire fraud. First, the complaint fails to allege use of the mails or wires when describing any of these particular acts of alleged fraud on the PTO. The only allegation of mailing with respect to these acts is in ¶ 9 of the complaint, which states that "Hologic and Rochester, directing the activities of the above-mentioned enterprise, committed repeated acts of mail fraud and wire fraud in connection with the activities of fraudulently obtained patents...." Without pleading that a specific mailing occurred, the author and recipient of the mailing, as well as the contents of the mailing, cannot be pleaded. Therefore, mail fraud cannot be pleaded. Similarly, failing to plead a specific phone conversation, and the participants and contents of that conversation, means that wire fraud is not pleaded. Apparently recognizing the deficiency of their complaint, plaintiffs, in their opposition papers and supporting submissions, do allege numerous specific mail and wire communications from defendants to the PTO and from the PTO to

§§ 1961–1968 of Title IX of the Organized Crime Control Act of 1970. "Failure to plead a specific subsection of § 1962 may alone constitute grounds to dismiss a RICO complaint, because it fails to inform defendants of the unlawful conduct in which they allegedly engaged." *Atlantic Gypsum Co.* at 511. Pleading a specific subsection of § 1962 is important because the enterprise requirements are different depending upon which subsection is allegedly violated. *See Reynolds v. East Dyer Dev. Co.,* 882 F.2d 1249, 1251 (7th Cir.1989). While plaintiffs' memorandum of law in opposition to defendants motion alleges that defendants violated § 1962(c), the Court is evaluating plaintiffs' complaint, not their legal briefs.

defendants. However, the law requires that such allegations be made in the complaint.[3]

■■■ The failure to identify when and by whom mailings were made, and when and with whom phone conversations took place, is not the most serious deficiency in the complaint. In alleging mail or wire fraud as predicate acts in a civil RICO complaint, it is necessary to allege that the injured party relied on the fraudulent misrepresentations of the defendant, and that the reliance was the cause of the injury. *See Metromedia Co. v. Fugazy,* 983 F.2d 350, 368 (2d Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993); *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1311 (2d Cir.1990); *Red Ball Interior Demolition Corp. v. Palmadessa,* 874 F.Supp. 576 (S.D.N.Y.1995); *Moeller v. Zaccaria,* 831 F.Supp. 1046, 1054 (S.D.N.Y.1993). *But see Trautz v. Weisman,* 819 F.Supp. 282, 286 (S.D.N.Y.1993). Allowing plaintiffs in a civil RICO action to allege mail or wire fraud without alleging reliance would mean extending the common law definition of fraud.[4] There is no justification for doing so.

■■■ In this case, plaintiffs do not claim that they relied on defendants' alleged misrepresentations to the PTO. Therefore, the thirty mailing acts between defendants and the PTO, as well as the three telephone conversations between defendants and PTO representatives, even if pleaded with particularity, cannot be predicate acts of mail or wire fraud.[5]

Plaintiffs also allege the prior federal court litigation, the ITC action, and the interference before the PTO as predicate acts of mail fraud. *See* Plaintiffs' Memorandum in Opposition ("Pls.' Opp."), at 25. Again, even assuming *arguendo* that the filing of these lawsuits amounts to misrepresentations, plaintiffs do not allege reliance. Any fraud caused by these lawsuits were on the district court, the ITC, and the PTO, not on the plaintiffs. The Court has carefully reviewed the cases cited by plaintiffs in support of their claim that the filing of a lawsuit can be a predicate act. None of the cases hold that acts of litigation can be predicate acts of mail fraud without a finding that the injured party relied on the misrepresentations. To the extent that *Lemelson v. Wang Lab., Inc.,* 874 F.Supp. 430, 432 (D.Mass.1994) suggests such a conclusion, the Court finds that court's reasoning unpersuasive, and rejects its precedential value.

**B.** *"Pattern"*

■■■ Even if it were to accept plaintiffs' argument that the legal actions in this case are predicate acts, the Court finds that these three acts are insufficient to constitute a "pattern" of racketeering activity. In order to establish a RICO pattern "it must also be shown that the predicates themselves amount to, or that they otherwise constitute

---

**3.** In their complaint plaintiffs do allege, *inter alia,* that Kavrukov made fraudulent filings in the PTO, and that Kavrukov, Wang and Plewes made various fraudulent representations to the PTO. However, they do not allege that these acts were conducted either through the mails or wires.

**4.** As restated by the American Law Institute:

The recipient of a fraudulent misrepresentation can recover against its maker for pecuniary loss resulting from it if, but only if, (a) he relies on the misrepresentation in acting or refraining from action, and (b) his reliance is justifiable.

Restatement (Second) of Torts § 537 (1976). It is true, as Jed Rakoff points out in his article, that criminal fraud cases and government enforcement actions do not require reliance. *See* Jed S. Rakoff, Is Reliance Required in RICO?, N.Y.L.J., at 3. But, "this is for the obvious reasons that the plaintiff is not the victim of the fraud, no damages are sought, and the primary,

if not sole, purpose of such actions are prophylactic and retributive, rather than compensatory." *Id.*

The Court understands that if the '189 and '192 Patents were procured fraudulently, then harm was caused to the plaintiff. The Court simply concludes that a remedy for such alleged harm must be sought through more appropriate means than RICO.

**5.** The defendants did not make this "no-reliance" argument in the papers they submitted in support of their motion to dismiss. So long as a plaintiff has been given notice and an opportunity to be heard, a district court has the authority to dismiss a complaint for failure to state a claim *sua sponte. See Wachtler v. County of Herkimer,* 35 F.3d 77, 82 (2d Cir.1994); *Leonhard v. United States,* 633 F.2d 599, 609 n. 11 (2d Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981). It necessarily follows that a court may dismiss a cause of action on grounds not raised by the parties.

a threat of, *continuing* racketeering activity." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 240, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989). In *H.J. Inc.,* the Supreme Court, in identifying continuity as a temporal concept, stated that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.* at 242, 109 S.Ct. at 2902. Continuous conduct can be either a "closed period of repeated conduct", or an "open-ended concept" referring to "past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2902. Closed-period continuity can be established "by proving a series of related predicates extending over a substantial period of time." *Id.* In this case, the district court and ITC actions instigated by defendants were filed within a day of each other; the interference proceeding began in May of 1991, within four months of the first two actions. Considering that the interference was initially provoked by plaintiffs, and the date of its instigation was determined by the PTO, it cannot be considered a predicate act of defendants. It is obvious that the legal actions instigated by Hologic within a day of each other cannot satisfy RICO's continuity requirement. Therefore, plaintiffs have failed to show a pattern of racketeering activity. Even assuming the interference proceeding is a predicate act, three acts over a four month period, conducted for the same purpose, and affecting the same people, cannot support a finding of closed-ended continuity. *See Three Crown Ltd. Partnership v. Caxton Corp.,* 817 F.Supp. 1033, 1044 (S.D.N.Y.1993) (six-month racketeering scheme "inadequate to establish closed-ended continuity"); *Airlines Reporting Corp. v. Aero Voyagers, Inc.,* 721 F.Supp. 579, 584 (S.D.N.Y.1989) (court found insufficient threat of continuity "where the racketeering acts involved a brief period of time, relatively few criminal acts, an uncomplicated scheme, few participants and few victims.") (citations omitted).

Plaintiffs are no more able to establish open-ended continuity. They do not and cannot argue that coercive litigation is a regular aspect of defendants' business, or that there is a likelihood of repetition of these alleged predicate acts. *See Passini v. Falke–Gruppe,* 745 F.Supp. 991, 993 (S.D.N.Y.1990) (no threat of continuity where facts do not show that plaintiff made a practice of defrauding clients).

### V. The Antitrust Claim

Plaintiffs' second cause of action is for attempted monopolization under § 2 of the Sherman Act. *See* 15 U.S.C. § 2. The Supreme Court has decided that the maintenance and enforcement of a patent obtained by fraud on the PTO may be the basis of a § 2 attempted monopolization claim. *See Walker Process Equip., Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 177, 86 S.Ct. 347, 350, 15 L.Ed.2d 247 (1965). In *Walker Process,* the Court also stated that proof of fraud on the PTO is insufficient to survive a motion to dismiss; rather, all of the elements of a § 2 claim must be established. *See id.* at 177–78, 86 S.Ct. at 350–51.

In order to establish a § 2 attempted monopolization claim, a plaintiff must prove (1) that the defendant engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power. *See Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456, 113 S.Ct. 884, 890–91, 122 L.Ed.2d 247 (1993). In order to determine whether there is a dangerous probability of achieving monopoly power, it is necessary for the court to define the relevant product market. *See id.*[6] Merely asserting that a commodity is in some way unique is insufficient to plead a relevant market. Rather, an antitrust complaint must explain why the market it alleges is the relevant, economically significant product market. *See Re–Alco Indus., Inc. v. National Ctr. for Health Educ., Inc.,* 812 F.Supp. 387, 391 (S.D.N.Y.1993). Because a relevant market includes all products which are reasonably interchangeable, *see id.* (citing *United States*

---

**6.** It is also necessary to define the relevant geographic market. In this case, the parties do not contest that the relevant geographic market is the United States.

v. *E.I. DuPont de Nemours & Co.*, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956)), "[p]laintiff's failure to define its market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal." *E & G Gabriel v. Gabriel Bros., Inc.*, 1994 WL 369147, at *3 (S.D.N.Y. July 13, 1994) (Leisure, J.) (citing *Ford Piano Supply Co. v. Steinway & Sons*, 1988 WL 3488 (S.D.N.Y. Jan. 13, 1988)).

 In this case, plaintiffs' complaint states that "[t]he relevant market is chest equalization radiography." Complaint ¶ 34a. The complaint also states that "at all relevant times, no persons other than the parties hereto have had the capacity to provide chest equalization radiography equipment in the United States." *Id.* at 34c. The Court finds this attempt to define the relevant market inadequate to survive a motion to dismiss. Plaintiffs' pleadings do not refer to any reasonably interchangeable alternatives, nor do they offer an explanation for why they are defining the relevant product market in such narrow terms.

 Because the relevant market has not been adequately defined, it is impossible for the Court to assess the anticompetitive effects of defendants procurement of the patents in issue. *See Re–Alco*, 812 F.Supp. at 392. Plaintiffs attempt to support their antitrust claim by merely asserting that defendants wanted to block their efforts to market their product in the United States by obtaining fraudulent patents. However, it is obvious that merely obtaining a patent for a product does not create a product market for antitrust purposes. *See Papst Motoren GMbH & Co. KG v. Kanematsu–Goshu (U.S.A.), Inc.*, 629 F.Supp. 864, 871 (S.D.N.Y. 1986) (" 'It may be that the [patented] device

... does not ·comprise a relevant market. There may·be effective substitutes for the device which do not infringe the patent.' ") (quoting *Walker Process*, 382 U.S. at 178, 86 S.Ct. at 350–51). Indeed, without pleadings from plaintiffs asserting otherwise, it appears to the Court that chest equalization radiography is not an independent product market, but rather part of the overall X-ray market. The Court's hesitancy to make such an assessment in this highly technical field is precisely why there is ample case authority requiring antitrust plaintiffs to plead interchangeability. *See E & G Gabriel*, 1994 WL 369147, at *3.[7]

Having shown that plaintiffs failed to plead a relevant product market, it necessarily follows that plaintiffs cannot prove that defendants' allegedly fraudulent conduct creates a dangerous probability of successful monopolization. *See Spectrum Sports*, 506 U.S. at 459, 113 S.Ct. at 891. Unless plaintiffs can show that chest equalization radiography is the relevant market, proof that defendants obtained their patents fraudulently does not translate into a showing of successful monopolization. *Cf. Twin Lab., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 570 (2d Cir.1990) ("A threshold showing for a successful attempted monopolization claim is sufficient market share by the defendant."). Therefore, plaintiffs' antitrust claim is dismissed.

## VI. *Declaratory Judgment*

 Plaintiffs, pursuant to the Declaratory Judgment Act, *see* 28 U.S.C. § 2201, seek from this Court a declaratory judgment finding the '192 Patent invalid and unenforceable.[8] In order to have standing to

7. Consideration of plaintiffs' supplemental submissions regarding relevant market would not alter the Court's conclusion. According to the complaint in the ITC action, the defendants' inventions, resulting in the '189 and '192 Patents, allowed, for the first time, the lungs and the mediastinum to be well-imaged on the same X-ray film. *See* Declaration of Claire Ann Koegler, Esq., in Support of Plaintiffs' Opposition ¶ 56. Putting aside the validity of using defendants' complaint from a different action to supplement plaintiffs' complaint, this information is unhelpful in defining a relevant market. Simply because this new invention could allegedly do in

one X-ray what previously could be done in two x-rays does not necessarily create a relevant market. Rather, it may well be that older machines requiring two X-rays work better, are more cost-efficient, etc. It is for this reason that plaintiffs' complaint should allege facts regarding substitute products, and distinguish among comparable products. *See Re–Alco*, 812 F.Supp. at 391–92.

8. In their surreply memorandum, plaintiffs limit their request for a declaratory judgment to the invalidity and unenforceability of the '192 Patent. Accordingly, the Court will limit its discussion to

**173**

sue for such a declaratory judgment, plaintiffs must plead that an actual controversy exists between the parties regarding the validity and enforceability of the patents. *See Cardinal Chemical Co. v. Morton Int'l Inc.,* 508 U.S. 83, 94–95, 113 S.Ct. 1967, 1974, 124 L.Ed.2d 1 (1993). Whether an actual case or controversy exists is a question of law decided by the Court. *See BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978 (Fed. Cir.1993); *see Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975). When seeking a declaration of patent invalidity and unenforceability, plaintiffs must plead two elements to establish an actual case or controversy: (1) "an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit;" and (2) "present activity [by the plaintiff] which could constitute infringement or concrete steps taken with the intent to conduct such activity." *BP Chemicals,* 4 F.3d at 978. The test of reasonable apprehension is an objective test. *See id.* The purpose of the test is "to determine whether the need for judicial attention is real and immediate." *id.* (citing *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937).

Plaintiffs fail to plead the required first element of the *BP Chemicals* test because they have failed to plead that defendant-patentee Hologic made any threat or took any other action that would create in plaintiffs a reasonable apprehension of being sued for infringement. *See Sturtevant v. Van Remortel,* 1995 WL 611320, at *7 (S.D.N.Y. Oct. 18, 1995) (plaintiff's failure to allege apprehension of being sued resulted in dismissal). Nor do plaintiffs plead the second element of the test: namely, that they are engaging in, or preparing to engage in, conduct constituting infringement.[9] Rather, plaintiffs assert (1) that the pending interfer-

ence proceeding provides jurisdiction; (2) the necessity of the Court to decide the invalidity of the '192 patent in deciding the motion to dismiss counts 1 and 2 of the complaint provides jurisdiction; and (3) Hologic's ownership of the '192 patent provides jurisdiction. All three of these assertions fail to meet the case or controversy requirement, leaving this Court without jurisdiction to issue a declaratory judgment. First, the pending interference was instituted by plaintiffs, and therefore cannot be seen as conduct or threatened by the defendant-patentee. Second, as this Opinion has made clear, it has not been necessary for the Court, in deciding this motion, to determine whether defendants' conduct constituted fraud on the PTO. Even if the Court did decide that defendants' conduct was fraudulent, the *BP Chemicals* case or controversy test is not met because plaintiffs still must show that defendants are threatening an infringement suit. Finally, the mere fact that a competitor may own a patent which plaintiffs claim a right to does not create jurisdiction for a court to issue a declaratory judgment. The need for judicial attention to this matter is neither real nor immediate. Plaintiffs' declaratory judgment count is dismissed for lack of jurisdiction.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss all of plaintiffs claims is hereby GRANTED. The Court grants plaintiffs leave to replead their complaint.

**SO ORDERED.**

---

this patent. Regardless, the Court's reasoning and conclusion on this issue applies equally to any proposed declaratory judgment involving the '189 Patent.

9. In their complaint, plaintiffs do state that a declaration of interference "means that the [PTO] has determined that each of the four patents or applications is claiming the same subject

matter and that only one patent may lawfully issue thereon." Complaint ¶ 27e. Perhaps a court could speculate on behalf of plaintiffs and read this to mean that, so long as this action is pending, plaintiffs are continually preparing to engage in infringing conduct. However, the Court's speculation is no substitute for the pleading required to withstand a motion to dismiss.