CCPI INC., Plaintiff,

v.

AMERICAN PREMIER, INC., Defendant.

Civil Action No. 96–446 MMS.

United States District Court, D. Delaware.

June 11, 1997.

Jeffrey B. Bove, N. Richard Powers, of Connolly, Bove, Lodge & Hutz, Wilmington, DE (David J. Josephic, Theodore R. Remaklus, of Wood, Herron & Evans, L.L.P., Cincinnati, OH, of counsel), for plaintiff.

Jack B. Blumenfeld, Julia Heaney, of Morris, Nichols, Arsht & Tunnell, Wilmington, DE (Steven I, Weisburd, Douglas A. Miro, Daniel N. Calder, of Ostrolenk, Faber, Gerb & Soffen, New York City, of counsel), for defendant.

*OPINION*

MURRAY M. SCHWARTZ, Senior District Judge.

## I. INTRODUCTION

Plaintiff CCPI, Inc. ("CCPI") filed suit against American Premier, Inc. ("API") on September 11, 1996, alleging infringement of its U.S. Patent No. 5,358,551 ("the '551 patent"). API denied infringement in its answer and asserted five affirmative defenses and a counterclaim. On December 30, 1995, the Court entered a Scheduling Order which permitted the parties to file motions to amend the pleadings until March 14, 1997. Discovery continues apace, albeit with the usual extraneous squabbles and tiffs seemingly endemic to far too many members of the patent bar.

Pending before the Court is API's March 14, 1997 motion for leave to file an amended answer containing three new counterclaims and four new affirmative defenses pursuant to Rule 15(a) of the Federal Rules of Civil Procedure and to join Foseco International Ltd., and Foseco, Inc. (collectively, "Foseco"), and Bethlehem Steel as defendants to the counterclaims pursuant to Rules 13(h), 19 and 20 of the Federal Rules of Civil Procedure. CCPI has opposed leave to amend the answer to include the three new counterclaims and one of the new affirmative defenses. For the reasons below, API's motion for leave to amend will be granted in accordance with the limitations outlined in this opinion.

## II. FACTUAL BACKGROUND

CCPI, API, Bethlehem Steel, and Foseco are four of the handful or so of companies that supply shaped tundish impact pads for use in the steel industry.[1] Titles to several patents covering tundish impact pads of various shapes and design seem to float among the parties. CCPI is the holder of the '551 patent and is suing API for infringement of that patent. Bethlehem Steel is the title holder of a separate patent covering impact pads, U.S. Patent No. 5,169,591 ("the '591 patent"), and Foseco is both the assignee of that patent and has a pending application for another patent covering impact pads.

During discovery, API unearthed copies of two agreements to which CCPI was a party. The first was a license agreement among

---

1. For an extended discussion on tundish impact pads, see the related claim construction opinion of *CCPI Inc. v. American Premier, Inc.,* 966 F.Supp. 276 (D.Del.1997).

CCPI, Bethlehem Steel, and Foseco. Pursuant to that agreement, Bethlehem Steel gave CCPI rights to sell circular impact pads, presumably covered by its '591 patent, and CCPI gave Foseco a royalty-free license in the United States and Canada to make, use, and sell rectangular impact pads, presumably covered by CCPI's '551 patent. Docket Item ("D.I.") 35 at Exhibit ("Exh.") A, page ("p.") 5. The second agreement was between CCPI and Foseco and purported to settle conflicting and overlapping patent rights relating to tundish impact pads. *Id.*

After examining these documents, API sought to amend its answer to add three new counterclaims and four new affirmative defenses. CCPI opposes the addition of all three new counterclaims, but only one of the four new affirmative defenses. These will be discussed below.

### III. DISCUSSION

### A. API's Motion to Amend its Answer

#### 1. Rule 15(a) principles

Motions to amend the pleadings are governed by Rule 15(a) of the Federal Rules of Civil Procedure. Rule 15(a) states if twenty days has elapsed since a party has served a pleading to which no responsive pleading is permitted, that party may amend its pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The Supreme Court of the United States has cautioned the lower federal courts to heed the liberal policy of amendment embodied in Rule 15(a). *Foman v. Davis,* 371 U.S. 178, 181–82, 83 S.Ct. 227, 229–30, 9 L.Ed.2d 222 (1962). While recognizing the decision to grant or deny leave to amend is committed to the discretion of the district court, the Supreme Court has stated leave to amend should be granted absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Id.* at 182, 83 S.Ct. at 230.

Mindful of the Scheduling Order,[2] CCPI has pressed only one reason leave should be denied—the alleged futility of API's amendment. Under Rule 15, an amendment is considered futile if it cannot withstand a motion to dismiss. *Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d 289, 292 (3d Cir.1988); *Site Microsurgical Sys., Inc. v. Cooper Co.,* 797 F.Supp. 333, 336 (D.Del. 1992).

The standards for deciding a motion to dismiss are familiar; a motion to dismiss will be granted if it is beyond doubt the litigant cannot prove a set of facts which would entitle him to relief. FED.R.CIV.P. 12(b)(6); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994). The facts alleged in API's amended answer must be accepted as true and all reasonable inferences drawn from those facts are construed in API's favor. *See Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996).

#### 2. The second and fourth counterclaims

■ API's proposed second counterclaim alleges CCPI conspired with Bethlehem and Foseco to cross-license related patents among themselves, to refuse licenses to others, to sue jointly alleged infringers irrespective of whose patent was allegedly infringed, and to defend jointly, without the individual right to settle or abstain, any declaratory judgment action filed by a third party. D.I. 34 at Exh. B, at 10–11. These exploits, API asserts, do violence to the antitrust protections of Section 1 of the Sherman Act, 15 U.S.C. § 1.[3] *See Mannington Mills, Inc. v. Congoleum Indus., Inc.,* 610 F.2d 1059, 1072 (3d Cir.1979) ("It may well be that an exclusive license to one party would be valid, but here the patentees have joined hands with the two largest competitors in the industry and by terms of their agreement have virtu-

---

**2.** To reiterate, the Scheduling Order established a March 14, 1997 deadline for motions to amend. D.I. 14 at 3. API's motion was filed on March 14, 1997. D.I. 34.

**3.** Section 1 of the Sherman Act states: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal." 15 U.S.C. § 1.

ally made it impossible for others to obtain rights under those patents.") (quoting with approval *United States v. Besser Mfg. Co.*, 96 F.Supp. 304, 311 (E.D.Mich.1951), *aff'd,* 343 U.S. 444, 72 S.Ct. 838, 96 L.Ed. 1063 (1952)). A plaintiff alleging a violation of section 1 of the Sherman Act ordinarily must establish the relevant product and geographic markets and demonstrate the effects of the unlawful restraint within those markets. *See, e.g., Orson, Inc., v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir.1996) (When stating a claim under Section 1 of the Sherman Act, "a plaintiff must prove that anticompetitive effects were produced within the relevant product and geographic markets."); *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 952 F.2d 715, 722 (3d Cir.1991).

■ API has argued in its brief that its proposed second counterclaim can be read to accuse CCPI, Bethlehem Steel, and Foseco of forming a "horizontal group boycott" in *per se* violation of Section 1 of the Sherman Act. The area of *per se* antitrust illegality is carefully limited, *see Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 178, 86 S.Ct. 347, 350–51, 15 L.Ed.2d 247 (1965), and courts have held in certain limited circumstances that a horizontal conspiracy is a *per se* violation of Section 1 of the Sherman Act.[4] *See Northern Pacific Ry. Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958) (acknowledging some practices, "because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use."); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1367 n. 9 (3d Cir.1996) ("Horizontal boycotts have received illegal per se treatment."); *United States v. Brown Univ.*, 5 F.3d 658, 670 (3d Cir.1993) (horizontal

price-fixing illegal *per se*); *Westman Comm'n Co. v. Hobart Intern., Inc.*, 796 F.2d 1216, 1224 n. 1. (10th Cir.1986) (holding a group boycott is *per se* illegal so long as there is "agreement among conspirators whose market positions are horizontal to each other.").

If API can prove a *per se* violation of the Sherman Act, then allegations CCPI, Bethlehem Steel, and Foseco possess market power in a relevant product market become extraneous. But API does not clearly demarcate a "horizontal boycott" allegation in its proposed second counterclaim; indeed, API has alleged market power in a product market and the words "horizontal boycott" are nowhere to be found in the amended answer. API cannot leave CCPI and the Court guessing as to what type of antitrust violation it alleges. If API claims a horizontal boycott under Section I of the Sherman Act and believes it need not then allege a relevant product market or market power, it may do so, but in clear and explicit terms. If it opts to allege a relevant product market and market power, as it seems to have already done, *see id.* at ¶ 42, then it must do so clearly and comprehensibly. API cannot simply cry "antitrust" or "Sherman Act" in a crowded courtroom and occupy its opponents and the Court with head-scratching attempts to peer through the smoke.

■ In its proposed fourth counterclaim, API alleges CCPI, in combination with Bethlehem Steel and Foseco, has attempted to monopolize the impact pads market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.[5] To state a claim for attempted monopolization, API must prove: (1) CCPI, Bethlehem Steel, and Foseco engaged in predatory or anticompetitive conduct, with (2) a specific intent to monopolize, and (3) a dangerous probability of achieving monopoly

---

4. The classic example of a horizontal group boycott is when "independent businesses at the same market level agree to boycott another business, also at the same level of distribution." *Beal Corp. Liquidating Trust v. Valleylab, Inc.*, 927 F.Supp. 1350, 1365 (D.Colo.1996) (citing *Dunn & Mavis, Inc. v. Nu–Car Driveaway, Inc.*, 691 F.2d 241, 243 (6th Cir.1982)). CCPI, Bethlehem Steel, and Foseco are independent suppliers of impact pads and API charges them with pooling

their patents and shutting out API. *See* D.I. 34 at Exh. B, at 11, ¶¶ 37–44.

5. Section 2 of the Sherman Act outlaws any monopolization, "attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations[.] ..." 15 U.S.C. § 2.

power. *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir.1994) (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456, 113 S.Ct. 884, 890–91, 122 L.Ed.2d 247 (1993)). Determining whether there is a "dangerous probability" of attaining monopoly control requires "inquiry into the relevant product and geographic market and the defendant's economic power in that market." [6] *Id.*

CCPI opposes amendment by arguing API has not articulated a sufficient definition of either the relevant product or geographic markets necessary to sustain a claim under either Section 1 or 2 of the Sherman Act. CCPI also argues API has not pled a sufficient allegation of market power.

CCPI's objections with regard to API's definition of the relevant product market and market power are well taken. In briefing and at argument, API specifies the relevant product market as the market for shaped impact pads.[7] *See* D.I. 53 at 6. This is not found in the amended answer or counterclaims, however. There, API has offered at least two varying definitions of the relevant market. Paragraph 42 of the proposed second counterclaim arguably alleges both product market and market power. It reads: "The Conspirators [CCPI, Bethlehem Steel, and Foseco] have market power *with respect to the impact pads covered by the '551 patent.*" D.I. 34 at Exh. B, ¶ 42 (emphasis added); *See also id.* at ¶ 57 (fourth counterclaim) ("CCPI, especially in combination with Bethlehem and Foseco, has market power over the products covered by the '551 patent."), ¶ 63 (fourth counterclaim) ("products covered by the '551 patent"). Similarly, API alleges elsewhere in its answer: "Bethlehem, by virtue of owning certain patent rights, along with CCPI and Foseco, controls a significant percentage of *all impact pads manufactured and sold in the United States.*"[8] *Id.* at ¶ 58 (fourth counterclaim); *see also id.*

at ¶¶ 61, 62 (fourth counterclaim). All told, API has offered three distinct and progressively more limited definitions of both the relevant product market and market power— impact pads, shaped impact pads, whatever they may be, and impact pads covered by the '551 patent.

As noted earlier, API seems to imply the relevant product market for its counterclaims consists of the products of the '551 patent. While stopping short of holding the relevant product market for an antitrust claim can never be defined by a patent, the Court feels such cases will at best be a rarity. *B.V. Optische Industrie de Oude Delft v. Hologic, Inc.*, 909 F.Supp. 162, 171–72 (S.D.N.Y.1995), is instructive in this regard. In *B.V. Optische*, the plaintiffs claimed the defendants had violated section 2 of the Sherman Act by blocking efforts to market "chest equalization radiography equipment" in the United States with the use of fraudulently obtained patents. *Id.* at 172. The plaintiffs alleged the relevant market was "chest equalization radiography" and further alleged only they and the defendants had "the capacity to provide chest equalization radiography equipment in the United States." *Id.* at 172.

Upon the defendants' motion to dismiss, the court first noted a party cannot adequately plead a relevant market with a bare assertion that a commodity is unique in some way. *Id.* at 171. Instead, the court explained, an antitrust complaint must explain why the market alleged is the relevant and "economically significant product market." *Id.* Definition of the relevant market entails reference to all products which are reasonably interchangeable, the court noted, *id.*, and a "[p]laintiff's failure to define its market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal[,]" *id.* at 172 (quoting

---

**6.** In *Walker Process*, the Supreme Court held proof of fraud on the PTO, alleged here by API in its fourth counterclaim, is not alone sufficient to survive a motion to dismiss; instead, all of the elements of a section 2 claim must be proven. 382 U.S. at 177–78, 86 S.Ct. at 350–51.

**7.** API has not deigned to inform the Court as to what it means by a "shaped" impact pad.

**8.** This assertion is bolstered by the deposition testimony of CCPI president, Bruce Mickey, who stated CCPI, Foseco, and API are essentially the only three parties who supply impact pads, and further conceded CCPI and Foseco contractually agreed they alone will supply impact pads. D.I. 53 at Exh. 1.

*E & G Gabriel v. Gabriel Bros., Inc.*, 1994 WL 369147, at *3 (S.D.N.Y. July 13, 1994)).

The court later addressed the contention the defendants had violated the Sherman Act by obtaining and enforcing fraudulent patents—a charge leveled against CCPI, Bethlehem Steel, and Foseco. *See* D.I. 34 at ¶¶ 55–64. "[I]t is obvious that merely obtaining a patent for a product does not create a product market for antitrust purposes." *Id.* (citing *Papst Motoren GmbH & Co. KG v. Kanematsu–Goshu (U.S.A.), Inc.*, 629 F.Supp. 864, 871 (S.D.N.Y.1986)); *see also Walker Process*, 382 U.S. at 178, 86 S.Ct. at 350–51 ("It may be that the [patented] device … does not comprise a relevant market. There may be effective substitutes for the device which do not infringe the patent."). Observing that it appears "that chest equalization radiography is not an independent product market, but rather part of the overall X-ray market," the *B.V. Optische* court concluded its "hesitancy to make such an assessment in this highly technical field is precisely why there is ample case authority requiring antitrust plaintiffs to plead interchangeability." *B.V.Optische*, 909 F.Supp. at 172 (citing *E & G Gabriel*, 1994 WL 369147, at *3).

API cannot define the relevant product market by the products covered by the '551 patent. Such a product market definition will not survive a motion to dismiss, for the same reasons highlighted by the *B.V. Optische* court. API must refer to any reasonably interchangeable alternatives in defining the relevant product market.[9]

There is yet another practical reason a product market may not ordinarily be defined by a product patent. Many litigated patents require judicial claim interpretation.

Until claim construction takes place, the parties cannot know with certainty what products are covered by the claims. Claim construction generally takes place well after an answer is filed and accompanying counterclaims, if any, are alleged. An antitrust counterclaim, unless it occupies the limited sphere of *per se* antitrust liability, must define the product market. But the need and time for claim construction may arise anytime after issue is joined, including immediately prior to or even during trial, a time far too late to define a relevant product market for resolution of an intertwined antitrust claim.

API's failure to define adequately the relevant product market also creates infirmities in its definition of market power. API must define market power clearly, and this it cannot do without a sufficiently precise definition of the relevant market. As noted above, API has offered three definitions of market power: at argument, counsel suggested CCPI, Bethlehem Steel, and Foseco possess market power with respect to shaped impact pads, and in the amended answer, API suggests they possess market power with respect to products covered by the '551 patent, D.I. 34 at Exh. B, ¶ 42, and all impact pads, *id.* at ¶ 58. Once API has chosen its relevant product market, it must plead some facts in support of its claim that CCPI, Bethlehem Steel, and Foseco have market power.[10]

Finally, while API defines the relevant geographic market elsewhere in the answer as the United States, *see id.* at 14, ¶¶ 58, 61–63, CCPI observes it does not do so within the confines of the proposed second or third counterclaims. Again, CCPI's protest is well placed. API must allege the relevant geo-

---

9. API excuses the omission of reasonably interchangeable alternatives in its answer by arguing CCPI, to establish lost profits, will likely need to prove at trial there are no acceptable noninfringing substitutes in the marketplace for the patented device. D.I. 53 at 10 (citing *Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed.Cir.), *cert. denied*, — U.S. ——, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995)). API has confused its burden to plead in its antitrust claims with CCPI's burden of proof at trial in its patent infringement claims.

10. For example, in its fourth counterclaim, API alleges CCPI and Foseco "manufacture and sell a

significant percentage of all impact pads manufactured and sold in the United States. Bethlehem by virtue of owning certain patent rights, along with CCPI and Foseco, controls a significant percentage of all impact pads manufactured and sold in the United States." D.I. 34 at ¶ 58. This would suffice as an allegation of market power for all of API's counterclaims if: (1) all impact pads manufactured and sold in the United States is indeed the relevant product market API is alleging, and (2) it were contained somewhere in the second and third counterclaims.

graphic market within the confines of each counterclaim.

CCPI has submitted technical objections to the proposed pleadings, and as such they are insufficient reasons to deny the pending motion, a mere request for leave to file an amended pleading. They do compel the Court to reject the amended answer and counterclaims as API has proffered them, however. The Court is not unmindful of the inherently factual nature of defining the relevant markets. *See Tunis Bros. Co.*, 952 F.2d at 722–23. But a litigant must adumbrate in each counterclaim an intelligible definition of the elements of its antitrust claim, even under the liberal notice pleading requirements of the Federal Rules of Civil Procedure, FED. R.CIV.P. 8(a). Accordingly, API will be granted leave to amend its answer to include its second and third counterclaims, but its amendment must remedy the defects identified in this opinion.

### 3. The third counterclaim and the tenth affirmative defense

Like its proposed second counterclaim, API's proposed third counterclaim and proposed tenth affirmative defense allege violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. API asserts CCPI and Foseco have secretly allocated conflicting patent claims without filing an interference agreement in the United States Patent and Trademark Office; this private agreement, argues API, violates 35 U.S.C. § 135(c), rendering the '551 patent unenforceable, and constitutes a violation of the Sherman Act.[11] D.I. 34 at 12–13, ¶¶ 49–53.

■ CCPI has opposed amendment to include these claims by stressing the language of 35 U.S.C. § 135(c). 35 U.S.C. § 135(c) states, with emphasis added:

11. API asserts Bethlehem Steel is a signatory to this agreement and has assumed certain obligations under it; therefore, API argues, Bethlehem Steel is also liable under Section 1 of the Sherman Act.

12. As the Third Circuit Court of Appeals has noted, an interference is "an adversary proceeding in the Patent Office in which the Office establishes who among competing applicants for a patent is the first inventor under United States

Any agreement or understanding between parties to an interference, including any collateral agreements referred to therein, *made in connection with or in contemplation of the termination of the interference,* shall be in writing and a true copy thereof be filed in the Patent and Trademark Office *before the termination of the interference as between the said parties to the agreement or understanding ....* Failure to file the copy of such agreement or understanding shall render permanently unenforceable such agreement or understanding and any patent of such parties involved in the interference or any patent subsequently issued on any application of such parties so involved....

The plain language of the statute requires an active interference proceeding, argues CCPI; the provision does not apply when parties agree outside of an interference proceeding.[12] CCPI asserts there was no interference proceeding between itself and Foseco, D.I. 50 at 10, and the two entities merely agreed to resolve privately a "blocking" situation regarding two patents.[13] Therefore, argues CCPI, there can be no liability or affirmative defense premised on 35 U.S.C. § 135(c).

While API has proffered policy justifications to expand the scope of 35 U.S.C. § 135(c) to cover agreements outside of interference proceedings, it has cited no case law to support its position. In fact, the jurisprudence interpreting 35 U.S.C. § 135(c) holds the text of the statute demands a causal relationship between an agreement relating to priority of claims and the termination of an interference proceeding; the implication is without an interference proceeding there can be no 35 U.S.C. § 135(c) infraction. *See CTS Corp. v. Piher Int'l Corp.*, 727 F.2d 1550 (Fed.Cir.1984); *Carella v. Starlight*

law." *United States v. FMC Corp.*, 717 F.2d 775, 776 n. 1 (3d Cir.1983).

13. A "blocking" patent situation occurs when two or more patents seem to be closely related, and none of the title holders can use its rights under the patent without fear of treading on the rights of the title holders of the other related patents.

*Archery,* 595 F.Supp. 613, 621 (E.D.Mich. 1984) (holding terms of section 135(c) are inapplicable to private settlement of lawsuit), *aff'd,* 804 F.2d 135 (Fed.Cir.1986).

In the alternative, API complains CCPI has refused to provide discovery on issues relating to the proposed third counterclaim. As a result of CCPI's recalcitrance, API asserts, it has no ability to know if an interference was declared by the PTO and then terminated, or if no interference was declared, why it was not declared. Further, API has obtained a letter from Foseco to CCPI; in the letter, Foseco admits copying in its own patent application some of the claims from CCPI's '551 patent. *See* D.I. 53 at Exh. 2. This would likely have caused the PTO to declare an interference. *See* 35 U.S.C. § 135(a) & (b).

But at argument, API conceded the declaration of an interference by the PTO is made available to the public. Further, CCPI has represented in its brief no interference proceeding was conducted. Ordinarily API would be entitled to more than just CCPI's word on the matter, but in this instance API had an opportunity to ascertain from the PTO whether an interference had been declared. API has not alleged an interference was declared between CCPI's patent and Foseco's pending application. Nor does API have any evidence such an interference was declared. Accordingly, API's amendment to include an affirmative defense based upon 35 U.S.C. § 135(c) would be futile. Leave to amend to add a tenth affirmative defense will be denied.[14]

■ Unlike its affirmative defense, API's proposed third counterclaim, which alleges a violation of Section 1 of the Sherman Act, is not wholly dependent upon 35 U.S.C. § 135(c). Rather, it is premised on the same conduct which underlies its 35 U.S.C. § 135(c) affirmative defense; that is, the private allocation of conflicting patent claims. But the prerequisite of an interference proceeding for a defense under 35 U.S.C. § 135(c) is not found in the text of the Sherman Act. CCPI has not attacked the proposed third counterclaim on any other basis; therefore, the Court must assume API's allegations, if true, would support a viable antitrust claim. Accordingly, leave to amend to add a third counterclaim will be granted, with the proviso the amended counterclaim defines the relevant product and geographic markets and alleges market power, or other facts which excuse the absence of a market power allegation.

## B. API's Motion to Join Bethlehem Steel and Foseco as Additional Counterclaim Defendants

API has moved pursuant to Rules 19 and 20 of the Federal Rules of Civil Procedure to join Bethlehem Steel and Foseco as party-defendants to its counterclaims.[15] CCPI, the only litigant besides API currently in this case, has not opposed this aspect of the API's motion.

Rule 19 states: "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties...." Rule 20 provides: "All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action."

Without an adversarial relationship between the parties and with CCPI having chosen not to contest joinder, it is impossible

---

14. The decision to deny API permission to add its proposed tenth affirmative defense is necessarily made with regard to the current state of affairs in the PTO; the fact the PTO may declare an interference in the future is of no import to this motion. In a like vein, the bare possibility a person may request reexamination of CCPI's '551 patent and/or Bethlehem Steel's '591 patent sometime in the future will not influence judicial administration of this litigation.

15. Rule 13(h) of the Federal Rules of Civil Procedure provides: "Persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20."

to know which rule, if any, is appropriate. Accordingly, API will be granted leave to join Bethlehem Steel and Foseco as counter-claim defendants.