Concord Associates, L.P. v. Entertainment Properties Trust

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2014

(Argued:  April 29, 2015          Decided: March 18, 2016)

Docket No. 13-3933-cv

_____

_____

CONCORD ASSOCIATES, L.P., CONCORD RACEWAY CORPORATION, CONCORD KIAMESHA
CASINO, LLC, CONCORD KIAMESHA CAPITAL CORP., CONCORD RESORT, LLC, CONCORD
KIAMESHA, LLC, CONCORD KIAMESHA HOTEL, LLC,

*Plaintiffs-Appellants*,

- v. -

ENTERTAINMENT PROPERTIES TRUST, EPT CONCORD, LLC, EPT CONCORD II, LLC,
EMPIRE RESORTS, INC., MONTICELLO RACEWAY MANAGEMENT, INC., GENTING NEW YORK
LLC, JOHN DOES 1—5, KIEN HUAT REALTY III LIMITED,

*Defendants-Appellees.*

_____

Before:   JACOBS, POOLER, AND HALL, *Circuit Judges*.

Appeal from the United States District Court for the Southern District of New York (Ramos*, J.*) granting defendants' motions to dismiss claims of violations of the Sherman Act, 15 U.S.C. §§ 1 & 2, and denying plaintiffs' motion for reconsideration.  In order to state a claim for a Sherman Act violation, a plaintiff must allege an antitrust injury, define the relevant geographic market, and allege conduct in violation of antitrust laws.  The District Court found, with respect to the Sherman Act claims, that the plaintiffs' proposed geographic and product markets were not sufficiently plausible to survive a motion to dismiss.  We agree and hold that the plaintiffs fail to state a claim for violations of the Sherman Act and, accordingly, AFFIRM the District Court's dismissal of the complaint.

SCOTT A. MARTIN, (James I. Serota & Carmen Beauchamp Ciparick, *on the brief*), Greenberg Traurig, LLP, New York, New York, and Alfred E. Donnellan, DelBello Donnellan Weingarten Wise & Wiederkehr, L.L.P., White Plains, NY, *for* Plaintiffs-Appellants Concord Associates, L.P., Concord Raceway Corporation, Concord Kiamesha Casino, LLC, Concord Kiamesha Capital Corp., Concord Resort, LLC, Concord Kiamesha, LLC and Concord Kiamesha Hotel, LLC.

MOSES SILVERMAN (Joshua D. Kaye, Jason L. Meizlish, & Elana R. Beale, *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, New York, *for* Defendants-Appellees Empire Resorts, Inc. and Monticello Raceway Management, Inc.

Y. DAVID SCHARF, (Kristin T. Roy, & Gayle Pollack, *on the brief*) Morrison Cohen LLP, New York, New York, *for* Defendant-Appellee Entertainment Properties Trust, EPT Concord, LLC, and EPT Concord II, LLC.

HOWARD ZELBO (Leah Brannon, *on the brief*), Cleary Gottlieb Steen & Hamilton LLP, New York, NY, *for* Defendants-Appellees Kien Huat Realty III Limited and Genting New York LLC.

HALL, *Circuit Judge*:

Plaintiffs-Appellants are seven entities who are collectively attempting to develop a casino-resort complex in

the Catskills region of New York State. Defendants-Appellees are three groups of investors and business owners with an interest in the casino industry and horse racing in the Catskills who, the plaintiffs claim, entered into an anti-competitive scheme to obstruct the plaintiffs' resort development project. Underlying this antitrust dispute is a threshold question that is ultimately dispositive of this appeal: For the purposes of an antitrust claim, whether the plaintiffs have alleged a plausible relevant geographic market for their casino-related products and services.

Facts and Procedural History

The facts of this case, which we view in the light most favorable to the plaintiffs, are set out in the district court's Order and Opinion in detail and are briefly summarized as follows. The plaintiffs, including Concord Associates, L.P. ("Concord Associates"), Concord Raceway Corporation, Concord Kiamesha Capital Corporation, Concord Resort, LLC ("Concord Resort"), Concord Kiamesha, LLC, and Concord Kiamesha Hotel, LLC, are collectively attempting to develop a casino gambling resort and race track known as the New Concord Casino Resort at the site of the former Concord Resort Hotel, located in the Catskills Mountains in Thompson, New York. The defendants, including Entertainment Properties Trust, EPT Concord, LLC, and EPT Concord II, LLC (collectively, "EPT"); Empire Resorts, Inc.

and Monticello Raceway Management, Inc. (collectively "Empire"); Kien Huat Realty III Limited ("Kien Huat Realty"); Genting New York LLC and John Doe entities 1–5 (collectively "Genting" or "Genting defendants"), are real estate developers and casino and gambling facility operators.

The plaintiffs intend to develop racing and casino gambling facilities, known as "racinos," on two adjoining properties, including 140 acres at the site of the Concord Resort Hotel, which was once a world-famous vacation destination for visitors to the Catskills Mountains until its closing and bankruptcy in 1998, and also 1,500 acres of adjacent land containing golf courses, residential properties, and vacant land. In 1999, plaintiff Concord Associates purchased these land parcels from the Concord Resort Hotel bankruptcy estate. In furtherance of their development efforts, the plaintiffs have conducted an environmental review, obtained necessary preliminary licensing approvals and development permits, and performed substantial work at the construction site.

In June 2010, as part of a legal settlement intended to resolve several lawsuits between defendant EPT and plaintiff Concord Associates, the plaintiffs transferred the 1,500 acre parcel to defendant EPT Concord II. Under the settlement, the plaintiffs retained the right for exclusive use and exploitation of the property, including the right to develop the proposed

4

resort. Accordingly, Concord Associates entered into an agreement with EPT Concord II that specifically reserved the right for the plaintiffs to lease a tract for a "racino" on the property along with additional easements, leases, and other rights related to development of the property. In addition, the terms included a restrictive covenant pursuant to which EPT Concord II agreed that its successors or assignees would not own or operate any competing casino, racino, racing or gaming facility on the property.

In addition to entering the agreement with EPT Concord II, the plaintiffs entered into a contractual relationship with Empire to further the development of their resort. Since 1993, Empire had owned and operated the Monticello Raceway, located approximately four miles from the plaintiffs' proposed resort. In 2004, the Monticello Raceway began offering casino gaming, and since that time it has been the only race track or casino in the Catskills. The closest racinos are eighty miles away in Pennsylvania, and 100 miles away in Yonkers. Monticello Raceway also claims that it "does not compete directly with other harness racing tracks in New York State for live racing patrons." Am. Compl. ¶ 131. Thus, according to the plaintiffs, Empire's position as the sole operator of casino gaming in the Catskills makes it "the only game in town" for local consumers and tourists. Am. Compl. ¶ 133.

Empire was initially supportive of the plaintiffs' proposed resort, and in March 2009 it entered into an agreement with Concord Associates to provide management services at the plaintiffs' proposed Raceway. But in November 2009, defendant Kien Huat Realty—which, together with other Genting defendants makes up one of the world's largest gaming conglomerates—acquired a majority interest in Empire. According to plaintiffs, Kien Huat Realty has since worked to undermine plaintiffs' resort project. Shortly after November 2009, Empire ceased cooperating with the plaintiffs and opened a rival "racino" in collaboration with Genting at the site of the Aqueduct Race Track, approximately 100 miles from the site of the plaintiffs' proposed Resort. In addition, in April 2011 EPT and Empire entered into an exclusive agreement to develop their own "racino" project adjacent to the plaintiffs' proposed resort and repudiated the lease and restrictive covenants promised to Concord Associates. The plaintiffs claim that Genting, EPT and Empire are all members of an anti-competitive scheme to undermine the plaintiffs' resort development project.

After bringing actions for breach of contract in the New York state court without success,[1] the plaintiffs commenced this federal antitrust action on March 7, 2012. In response to the

---

[1] *See Concord Assocs., L.P. v. EPT Concord, LLC*, No. 1611-2011 (N.Y. Sup. Ct. Sullivan Cnty. June 30, 2014).

6

defendants' motions to dismiss, the plaintiffs filed a First Amended Complaint (the "Amended Complaint") that purported to define the relevant geographic market for the products the plaintiffs' resort would have to offer. As pleaded, that relevant market includes the area within a radius of approximately 100 miles from the Town of Thompson, with a total population of more than 18-20 million people, of whom almost ninety percent reside in the New York City metropolitan area ("NY Metro area"). In response to the Amended Complaint, the defendants moved to dismiss it on the basis that the plaintiffs had not defined a plausible geographic market. Ultimately, the district court granted the motions to dismiss as to all defendants without considering the additional materials the plaintiffs submitted or a proposed Second Amended Complaint.[2]

---

[2] The plaintiffs contend that the district court erred in failing to consider extrinsic materials they submitted in opposition to the defendants' motions to dismiss, including several exhibits and Securities & Exchange disclosures. The plaintiffs claim that these documents show that Genting conspired to exclude market competition in violation of antitrust laws. We need not address the substance of the plaintiffs' arguments because our decision is based on the plaintiffs' failure to allege a plausible relevant market in which competition could be restrained. In any event, the district court correctly declined to consider the extrinsic materials, as they were not incorporated by reference or otherwise integral to the Complaint. *See Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (stating that, in adjudicating Rule 12(b)(6) motion, district court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of

*See Concord Assocs., L.P v. Entm't Props. Tr., et al.,* No. 12-1667, 2014 WL 1396524, at *27 (S.D.N.Y. Apr. 9, 2014). Further, the court dismissed the plaintiffs' state law claims, declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3).[3] *Id.* The plaintiffs filed a motion for reconsideration, which the district court denied, reasoning that it could not consider materials not presented as part of the Amended Complaint and that, in any event, the plaintiffs' additional arguments failed to rectify their fatally flawed market definitions. *See Concord Assocs., L.P. v. Entm't Props. Tr.*, No. 12-1667, 2014 WL 5643240, at *6–7 (S.D.N.Y. Nov. 3, 2014).

On appeal, the plaintiffs contend that the district court erred in deciding that the Amended Complaint failed to allege a plausible relevant geographic market and that the factual allegations were insufficient to connect certain of the defendants to the alleged conspiracy. The plaintiffs also claim the district court erred in denying them leave to amend the

which judicial notice may be taken"). Further, even if the documents were properly the subject of judicial notice, judicial notice would not be appropriate because the plaintiffs did not rely on the documents in drafting the Complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

[3] In this appeal, the plaintiffs have not specifically challenged the district court's dismissal of their state law claims, and we therefore consider any such challenge to be waived. *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005).

Amended Complaint. Because we agree with the district court that the plaintiffs' proposed market definition is inherently implausible, we find that the plaintiffs failed to allege adequate facts to state a violation of the Sherman Act. Therefore, we affirm the judgment of the district court dismissing the complaint.

## Analysis

This court "review[s] *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," meaning that there is "more than a sheer possibility that a defendant acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556-57). At the same time, there is no heightened pleading standard in antitrust cases, and the

9

facts alleged are subject to Federal Rule of Civil Procedure 8(a)'s general requirement of a "short plain statement" of facts supporting a plausible claim. *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001).

The plaintiffs brought claims under Sections One and Two of the Sherman Act. Section One of the Sherman Act declares illegal "[e]very contract, combination . . . , or conspiracy, in restraint of trade or commerce . . . ." 15 U.S.C. § 1. Section Two of the Sherman Act makes it illegal "to monopolize, or attempt to monopolize, or combine or conspire . . . to monopolize . . . trade or commerce . . . ." 15 U.S.C. § 2. Section Four of the Clayton Act provides a private right of action, with a recovery of treble damages, to "any person who [has been] injured in his business or property by reason of anything forbidden in the antitrust laws . . . ." 15 U.S.C. § 15(a).

To survive a motion to dismiss, a Sherman Act claim must "(1) define the relevant geographic market, (2) allege an antitrust injury, and (3) allege conduct in violation of antitrust laws." *New York Medscan LLC v. N.Y. Univ. Sch. Of Med.*, 430 F. Supp. 2d 140, 145 (S.D.N.Y. 2015). In such actions, the relevant market is the "'area of effective competition' within which the defendant operates." *AD/SAT, Div. of Skylight, Inc. v. Assoc. Press*, 181 F.3d 216, 227 (2d Cir. 1999) (quoting

*Tampa Electric Co. v. Nashville Coal Co.*, 365 U.S. 320, 327-28 (1961)). That is, a market consists of an area where sellers, "if unified by a hypothetical cartel or merger, *could profitably raise prices* significantly above the competitive level." *Id.* at 228.

For antitrust purposes, the concept of a market has two components: a product market and a geographic market. *Bayer Schering Pharma AG v. Sandoz, Inc.*, 813 F. Supp. 2d 569, 574 (S.D.N.Y 2011). "A relevant product market consists of 'products that have reasonable interchangeability for the purposes for which they are produced—price, use and qualities considered.'" *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (quoting *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 404 (1956)). By contrast, "the geographic market analysis seeks to identify the precise geographic boundaries of effective competition in order to reach a more informed conclusion on potential harm to the market." *Mathias v. Daily News, L.P.*, 152 F.Supp.2d 465, 480 (S.D.N.Y. 2001). "Courts generally measure a market's geographic scope, the 'area of effective competition,' by determining the areas in which the seller operates and where consumers can turn, as a practical matter, for supply of the relevant product." *Heerwagen v. Clear Channel Commc'ns,* 435 F.3d 219, 227 (2d Cir. 2006) (citation omitted), *overruled on other grounds by Teamsters Local 445*

11

*Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201 (2d Cir. 2008).

"Taken together, the product and geographic components illuminate the relevant market analysis, which is essential for assessing the potential harm to competition from the defendants' alleged misconduct." *Mathias*, 152 F. Supp. 2d at 481. And this analysis is equally applicable to claims made under Section Two of the Sherman Act, because "without a definition of that market there is no way to measure the defendant's ability to lessen or destroy competition." *Xerox Corp. v. Media Sciences Int'l, Inc.*, 511 F. Supp. 2d 372, 383 (S.D.N.Y. 2007) (quoting *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965) (internal alterations omitted)).

Although market definition is a "deeply fact-intensive inquiry" not ordinarily subject to dismissal at the pleadings stage, *Todd,* 275 F.3d at 199, there is "no absolute rule" against dismissal where the plaintiff has failed to articulate a plausible explanation as to why a market should be limited in a particular way, *id*. at 200. Thus, in order to survive a motion to dismiss, it is appropriate for a district court to assess whether the plaintiffs' complaint asserts sufficient facts to allege plausibly the existence of both a product and geographic market. *Id.*

The district court determined that the plaintiffs' antitrust claims were subject to dismissal[4] because the plaintiffs had failed to plead a plausible relevant racing/gaming market in the Catskills region.[5] *Concord Assocs.*, 2014 WL 1396524, at **10, 16-17. It found the plaintiffs' proposed geographic market "too narrow and inherently implausible." *Id.* at *16. We agree.

The plaintiffs have provided no basis on which to justify their proposed geographic market definition. Although they define the relevant market as "the Racing/Gaming Market in the Catskills region," Appellants' Br. 15, an area consisting of primarily four counties, they also assert that the resort would draw customers from a "catchment area" consisting of twenty-

---

[4] Because we affirm the district court on the basis that the plaintiffs failed to allege a plausible geographic market, we do not decide whether the plaintiffs also failed to allege an antitrust violation or an antitrust injury.

[5] As an initial matter, the plaintiffs claim to have alleged that the defendants committed a *per se* violation of Section 1 of the Sherman Act by engaging in "a group boycott" and a "refusal to deal," which relieves the plaintiffs from the requirement of demonstrating a market-wide anticompetitive effect. A *per se* violation involves conduct "so plainly harmful to competition and so obviously lacking in any redeeming pro-competitive values that [it is] 'conclusively presumed illegal without further examination.'" *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 542 (2d Cir. 1993) (quoting *Broadcast Music, Inc. v. CBS*, 441 U.S. 1, 8 (1979)). We agree with the district court that the plaintiffs have failed to allege a *per se* violation of the Sherman Act. *See Concord Assocs.*, 2014 WL 1396524, at *11.

three counties in New York, Northeastern New Jersey, and Pennsylvania, with a total population of more than 18–20 million people. *Concord Assocs.*, 2014 WL 1396524, at \*14. Conveniently for the plaintiffs, this proposed market definition excludes gambling markets in Connecticut, Pennsylvania, and New Jersey that are well-known and accessible to residents of the NY Metro area. We find unpersuasive the plaintiffs' claim that the bulk of the resort's potential customers would not view Atlantic City and Connecticut as "reasonably interchangeable substitutes for a Catskills racino in terms of distance as well as regional character." Appellants' Br. 22. Although facilities in the latter locations are approximately 125 miles from the NY Metro area rather than 100 miles, the plaintiffs fail to present a plausible basis for explaining why an additional twenty-five miles makes the difference. These locations are reasonably accessible by car to NY Metro area residents, and as the plaintiffs concede, these other facilities provide amenities comparable to the plaintiffs' proposed resort.

As for the "regional character" of the Catskills, the plaintiffs argue that the Catskills region comprises a "unique" geographic market for a "racino" and hotel complex based on its status as a tourist destination with "popular natural resources for water sports, mountain sports, hunting and golf." Am. Compl. ¶ 154. However, "[m]erely asserting that a commodity is in some

14

way unique is insufficient to plead a relevant market. Rather, an antitrust complaint must explain why the market it alleges is the relevant, economically significant product market." *B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 171 (S.D.N.Y. 1995). We agree with the district court that the plaintiffs have not plausibly alleged why their proposed resort differs from the variety of other options for tourists to combine a gambling trip, access to natural resources, and other related activities available more or less the same distance from the NY Metro area as Thompson, New York. *See, e.g., Smugglers Notch Homeowners' Assoc., Inc. v. Smugglers' Notch Mmgt. Co., Ltd.,* 08 Civ. 186, 2009 WL 1545829 (D. Vt. May 29, 2009), *affirmed,* 414 F. App'x 372 (2d Cir. 2011) (holding that antitrust plaintiffs had not shown why their "vacation properties and recreation facilities . . . are different from the myriad other options at ski resorts in Vermont"). We agree with the defendants' argument that various locations around New York City could also be thought of as tourist destinations, where tourists could gamble and have access to natural resources and other related activities.

The plaintiffs compare their proposed geographic market to the Aspen skiing market and the Atlantic City gambling market, both of which have been implicitly recognized as valid market definitions in antitrust suits. *See Aspen Skiing Co. v. Aspen*

*Highlands Skiing Corp.*, 472 U.S. 585, 587-88 (1985); *Mirage Resorts, Inc. v. Trump,* No. 97 Civ. 6693(DAB), 1998 WL 898340, at *2 (S.D.N.Y Dec. 22, 1998). But the plaintiffs in those cases contended that the markets were highly localized, as tourists specifically came to Aspen and Atlantic City, and then considered only product options within those destination locations for skiing and gambling, respectively. *See Aspen Skiing Co.,* 472 U.S. at 596 (describing Aspen as a "destination" market and detailing dispute among ski resorts within Aspen); *Mirage Resorts, Inc.*, 1998 WL 898340, at *3 (stating plaintiff's claim that defendant had "suppress[ed] competition in the Atlantic City gaming market"). Furthermore, the market definitions in *Aspen Skiing* and *Mirage Resorts* were not subject to challenge, and the validity of those market definitions was therefore not at issue. *See Aspen Skiing Co.,* 472 U.S. at 597-98 (explaining that primary issue before jury was whether defendant had monopolized the market); *Mirage Resorts, Inc.*, 1998 WL 898340, at *2 (stating that defendant's arguments for dismissal included plaintiff's failure to allege anti-competitive activities, elements of a conspiracy, or injury to competition).

While plaintiffs argue that some gambling markets are uniquely localized, relying on *In the Matter of Pinnacle Entertainment, Inc.,* No. 9355, 2013 WL 2444712, at *9-10 (F.T.C. May 28, 2013), the mere fact that *certain* gambling markets may

16

be localized does not relieve the plaintiffs of the requirement to show why the Catskills gambling market is a localized or regional market—particularly where the vast majority of customers are not local and have a myriad of other comparable options.

Moreover, as the district court noted, "by arbitrarily excising those alternative options and essentially arguing that there are no comparable competitors, Plaintiffs exempt themselves from the requirement of defining the market according to the rules of interchangeability and cross-elasticity." *Concord Assocs.*, 2014 WL 1396524 at *17. In so doing, the plaintiffs further undermine the plausibility of their antitrust claims. *See B.V. Optische Industrie De Oude Delft*, 909 F. Supp. at 171-72 ("Because a relevant market includes all products which are reasonably interchangeable, . . . [the plaintiffs'] failure to define [the] market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal.") (internal quotation and citation omitted).

Because plaintiffs failed to plead a relevant geographic market in the Amended Complaint, the district court correctly concluded that each of the Sherman Act claims was subject to dismissal.

Finally, we address the plaintiffs' argument that the district court erred by not granting them leave to file a second

17

amended complaint. We review for abuse of discretion a district court's decision to deny a party leave to amend a complaint. *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003). The plaintiffs contend that the district court erroneously determined that the plaintiffs had withdrawn their request for leave to amend the Amended Complaint. *See Concord Associates*, 2014 WL 1396524, at *27. We need not decide this question, however, because granting leave to file a second amended complaint would have been futile. *See Nielsen v. Rabin,* 746 F.3d 58, 62 (2d Cir. 2014). Although the plaintiffs' proposed Second Amended Complaint alleges two relevant markets—a "Catskills Racing/Gaming Market," ¶ 151, and a "Downstate New York Racing/Gaming Market," ¶ 158—rather than one market, these proposed markets refer to the same geographic area as the market alleged in the Amended Complaint. This re-characterization fails to remedy the flaws in the plaintiffs' proposed geographic market definition.

## Conclusion

We hold that the plaintiffs' pleadings fail to define a plausible relevant geographic or product market for antitrust purposes, and that the district court properly dismissed their Sherman Act claims. The judgment of the district court is AFFIRMED.

18