

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DJENEBA SIDIBE; et al., | No. 14-16234 |
| Plaintiffs - Appellants, | D.C. No. 3:12-cv-04854-LB |
| v. | |
| SUTTER HEALTH, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Laurel D. Beeler, Magistrate Judge, Presiding

Argued and Submitted July 8, 2016
San Francisco, California

Before: SILVERMAN and NGUYEN, Circuit Judges, and ANELLO,[**] District
Judge.

Djeneba Sidibe and other health plan members appeal the dismissal of their

third amended antitrust class action complaint under §§ 1 and 2 of the Sherman Act

against Sutter Health, an owner and operator of hospitals and other healthcare

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Michael M. Anello, District Judge for the U.S. District
Court for the Southern District of California, sitting by designation.

service providers in Northern California. We have jurisdiction under 28 U.S.C. § 1291, and we review de novo. *See In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1191 (9th Cir. 2015). We reverse the district court's judgment and remand for further proceedings.

Sutter sells inpatient hospital services to commercial health insurance plans. Plaintiffs allege that Sutter forced illegal tying arrangements and anti-steering clauses upon the health plans, causing plaintiffs to pay higher health insurance premiums and other healthcare charges. They allege that the relevant geographic markets for the sale of inpatient hospital services are hospital service areas, or "HSAs," as defined in the *Dartmouth Atlas of Health Care*. Each HSA is a collection of specifically-defined zip codes whose residents receive most of their hospitalizations in that local area. Within the tying HSAs, plaintiffs allege that there are no economic substitutes for Sutter's inpatient hospital services sold to health insurance plans. In particular, plaintiffs allege that "Sutter now owns the only acute care hospitals"or offers "the only available hospital facilities to health plan members" in several Northern California HSAs, including Antioch, Burlingame, Roseville, Davis, and Vallejo. Because the market for inpatient hospitalizations is purportedly local, plaintiffs further allege that health plan members residing in an HSA generally do not go outside that HSA to seek

2

inpatient hospital services; and, even if a hypothetical or actual monopolist raised prices, health plans could not feasibly contract with hospital services providers outside the HSA in these tying markets. *See Saint Alphonsus Med. Ctr.-Nampa, Inc. v. St. Luke's Health Sys. Ltd.*, 778 F.3d 775, 784 (9th Cir. 2015) (explaining that a common method for determining the relevant geographic market "is to find whether a hypothetical monopolist could impose a 'small but significant nontransitory increase in price' ('SSNIP') in the proposed market"). Sutter allegedly leverages its market power in the tying markets to force the health plans to include inpatient services in five other HSAs (the "tied" markets)—such as San Francisco, Oakland, and Sacramento—and to pay supra-competitive rates for these services.

Plaintiffs' geographic market allegations are sufficiently detailed. A geographic market is the area "where buyers can turn for alternative sources of supply." *Id*. Here, the third amended complaint describes the purported "tying" markets, specifically avers that Sutter owns the only inpatient hospital facility in these markets, and alleges that the health plans (and their members) cannot obtain alternative sources of inpatient care in these areas. At the pleading stage, plaintiffs were not required to allege evidentiary facts such as what percentages of patients from inside and outside a particular HSA use the hospitals in that HSA, or to

3

otherwise rebut every purported flaw in the *Dartmouth Atlas of Healthcare*'s methodology. *See Newcal Indus., Inc. v. IKON Office Solution*, 513 F.3d 1038, 1044-45 (9th Cir. 2008). "[T]he validity of the 'relevant market' is typically a factual element rather than a legal element," and inquiry into the commercial realities faced by consumers is more appropriately addressed at summary judgment or trial. *Id*. at 1045; *see also Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 853 (1st Cir. 2016); *Lucas Auto Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 275 F.3d 762 (9th Cir. 2002) (reversing summary judgment on the basis of a genuine issue of material fact regarding market definition).

Similarly, at this stage, we also cannot say that plaintiffs' geographic market allegations were inherently implausible. *See Newcal*, 513 F.3d at 1045. The third amended complaint explains that HSAs are areas within which the residents obtain most of their inpatient hospital services; it is not inherently implausible that these residents also would be unwilling to seek treatment elsewhere, and that health plans therefore could not purchase hospital services outside of the alleged HSAs. *See Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 183-84 (3d Cir. 2015) (holding that complaint sufficiently alleged facts suggesting that defendant could raise prices without causing consumers to drive elsewhere for full-service supermarkets), *cert. denied*, 2016 WL 1046885 (U.S. May 23, 2016) (No.

4

15-1156); *cf. Concord Assocs., L.P. v. Entm't Props. Trust*, 817 F.3d 46, 53-55 (2d Cir. 2016) (affirming dismissal of complaint on the basis that plaintiffs' proposed racing/gaming market in the Catskills region was inherently implausible).  The district court, employing its judicial experience and common sense, was not bound to conclude that plaintiffs' geographic market allegations were untenable on their face.  *See Ebner v. Fresh, Inc.*, 818 F.3d 799, 803 (9th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

**REVERSED and REMANDED.**[1]

---

[1]    Appellee's request for judicial notice of hospital data from California's Office of Statewide Health Planning and Development, and other facts and matters of public record, is denied.