**Total Asset Recovery Servs. LLC v MetLife, Inc.**

2024 NY Slip Op 33612(U)

October 13, 2024

Supreme Court, New York County

Docket Number: Index No. 115336/2010

Judge: Andrea Masley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 48

---------------------------------------------------------------------------------X

TOTAL ASSET RECOVERY SERVICES LLC, ON BEHALF OF THE STATE OF NEW YORK,

                           Plaintiff,

                       - v -

METLIFE, INC. AND ITS SUBSIDIARIES AND AFFILIATES, METROPOLITAN LIFE INSURANCE COMPANY, PRUDENTIAL FINANCIAL, INC., AND ITS SUBSIDIARIES AND AFFILIATES, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, PRUDENTIAL INSURANCE AGENCY, LLC, AXA FINANCIAL, INC., D/B/A AXA GROUP INC., AND ITS SUBSIDIARIES AND AFFILIATES, AXA EQUITABLE FINANCIAL SERVICES, LLC, AXA EQUITABLE LIFE INSURANCE COMPANY, GENWORTH FINANCIAL, INC., AND ITS SUBSIDIARIES AND AFFILIATES, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, AND ITS SUBSIDIARIES AND AFFILIATES, THE GUARDIAN INSURANCE & ANNUITY COMPANY, INC, JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.), JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK, JOHN HANCOCK LIFE & HEALTH INSURANCE COMPANY, MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, D/B/A MASSMUTUAL FINANCIAL GROUP, D/B/A MASSMUTUAL, AND ITS SUBSIDIARIES AND AFFILIATES, NEW YORK LIFE INSURANCE COMPANY, AND ITS SUBSIDIARIES AND AFFILIATES, NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION, D/B/A NEW YORK LIFE, TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, D/B/A TEACHERS INSURANCE AND ANNUITY, ASSOCIATION - COLLEGE RETIREMENT EQUITIES FUND (TIAA-CREF), AND ITS SUBSIDIARIES AND AFFILIATES, TIAA-CREF LIFE INSURANCE COMPANY, and JOHN DOES 23 - 100,

                       Defendants.

---------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 115336/2010 |
| MOTION DATE | -- |
| MOTION SEQ. NO. | 014 015 |

**DECISION + ORDER ON MOTION**

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 014) 259, 260, 261, 262, 263, 264, 265, 266, 267, 268, 269, 280, 292, 293, 294, 299, 308, 309

were read on this motion to/for                 DISMISS                        .

**115336/2010  TOTAL ASSET RECOVERY vs. METLIFE, INC.**
**Motion No.  014 015**

                **Page 1 of 17**

The following e-filed documents, listed by NYSCEF document number (Motion 015) 270, 271, 272, 273, 274, 275, 276, 277, 278, 279, 281, 295, 300, 310

were read on this motion to/for _____ DISMISS _____.

In motion sequence 014, defendants Genworth Financial, Inc. (Genworth Financial) and Genworth Life Insurance Company of New York (Genworth Life, and together, Genworth) move pursuant to CPLR 3211 (a) (1) and (7) to dismiss the fourth amended complaint.

In motion sequence 015, defendants MetLife, Inc., Metropolitan Life Insurance Company (together, MetLife); Prudential Financial, Inc., The Prudential Insurance Company of America, Prudential Insurance Agency, LLC (together, Prudential); AXA Financial, Inc., AXA Equitable Financial Services, LLC, AXA Equitable Life Insurance Company (together, AXA); The Guardian Life Insurance Company of America, The Guardian Insurance & Annuity Company, Inc. (together, Guardian); John Hancock Life Insurance Company (U.S.A.), John Hancock Life Insurance Company of New York, John Hancock Life & Health Insurance Company (together, John Hancock); Massachusetts Mutual Life Insurance Company (MassMutual); New York Life Insurance Company, New York Life Insurance and Annuity Corporation (together, New York Life); and Teachers Insurance and Annuity Association of America and TIAA-CREF Life Insurance Company (together, TIAA) move pursuant to CPLR 3211 (a) (7) to dismiss the fourth amended complaint.

**Background and Procedural History**

Unless indicated otherwise, the following facts are taken from the fourth amended complaint and, for the purposes of these motions, are accepted as true.

115336/2010   TOTAL ASSET RECOVERY vs. METLIFE, INC.
Motion No.  014 015

Page 2 of 17

INDEX NO. 115336/2010

RECEIVED NYSCEF: 10/13/2024

Plaintiff Total Asset Recovery Services LLC, an investigative company that locates lost or unrecoverable funds on behalf of owners and creditors, brought this action on behalf of itself and the state of New York under *qui tam* provisions of the New York False Claims Act, State Finance Law § 187 *et seq.* (NYSCEF Doc. No. [NYSCEF] 254, Fourth Amended Complaint [4AC] at 2-3; *id.* ¶ 1.)[1] Defendants are insurance and financial services companies. (*Id.* ¶¶ 3-23.) Plaintiff alleges that defendants have violated he Abandoned Property Law which imposes a duty on defendants to report and escheat to New York any funds held by them that are deemed abandoned by virtue of (i) the funds remaining unclaimed for three years by the person entitled to them upon maturity or (ii) the insured attaining the limiting age under an applicable mortality table, and that defendants failed to report and escheat such abandoned property.[2] (*See e.g. id.* ¶¶ 88-91.) Plaintiff alleges a claim for violation of State Finance Law § 189 (1) (g) against each of the nine defendant groups defined above – Genworth, MetLife, Prudential, AXA, Guardian, John Hancock, MassMutual, New York Life, and TIAA.

This court granted defendants' motions to dismiss the second amended complaint. (*See* NYSCEF 135, Decision and Order at 27/27 [mot. seq. nos. 001, 002,

---

[1] A plaintiff/relator may bring a *qui tam* civil action for violation of §189 of the New York False Claims Act itself and on behalf of the people of the State of New York. (*See* State Finance Law § 190 [2] [a].) Plaintiff/relator is awarded a percentage of the proceeds or settlement if the action is successful. (*See* State Finance Law § 190 [6] [a]-[b].)

[2] The background of this action is stated in further detail in one of this court's previous decisions. (*See Total Asset Recovery Servs., LLC v MetLife, Inc.*, 2019 NY Slip Op 30841[U], *2-10 [Sup Ct, NY County 2019] [NYSCEF 135, Decision and Order at 4-11/27 (mot. seq. nos. 001, 002, 003, 004, 005, 009)], *revd sub nom. Total Asset Recovery Services LLC on behalf of State v Metlife, Inc.*, 189 AD3d 519 [1st Dept 2020].)

**115336/2010   TOTAL ASSET RECOVERY vs. METLIFE, INC.**                                        **Page 3 of 17**
**Motion No.  014 015**

[* 3]

003, 004, 005, 009].)  The Appellate Division, First Department (ADFD), reversed on the law[3] but ultimately held that

> "Supreme Court correctly determined that plaintiff failed to plead defendants' purported fraud on the State with the requisite level of specificity.  Rather, the complaint asserts, in general terms, that all defendants engaged in all of the alleged conduct, which is insufficiently particular (*see Aetna Cas. & Sur. Co. v Merchants Mut. Ins. Co.*, 84 AD2d 736, 736 [1st Dept 1981]; *Abdale v North Shore-Long Is. Jewish Health Sys., Inc.*, 49 Misc 3d 1027, 1043 [Sup Ct, Queens County 2015]). However, given the trove of data which plaintiff alleges to have amassed over the past several years, the fact that this is the first time that the complaint's veracity has been tested against dispositive motions (*cf. United States ex rel. Grenadyor v Ukranian Vil. Pharm., Inc.*, 895 F Supp 2d 872, 882 [ND Ill 2012]), and the general principle that leave to amend the pleadings should be freely given (*see* CPLR 3025[b]), it would not be futile to afford plaintiff a further opportunity to amend the complaint and state, with the necessary level of specificity, which defendants engaged in what conduct that gives rise to liability under NYFCA." (*Total Asset Recovery Servs. LLC*, 189 AD3d at 523 [citations omitted] [NYSCEF 171 at 6].)

Plaintiff repleaded.  Allegations in paragraphs 1 through 91 of the operative fourth amended complaint,[4] which are made against all defendants collectively, are substantially the same as allegations made in the second amended complaint.

---

[3] The ADFD held that "life insurers [have a duty] to escheat unclaimed life insurance proceeds even in the absence of notice or proof of death," citing *Connecticut Mut. Life Ins. Co. v Moore*, 333 US 541 (1948). (*Total Asset Recovery Servs. LLC*, 189 AD3d at 522 [citations omitted] [NYSCEF 171 at 5].)  In *Moore*, the court rejected the insurers' view that the dormancy period for escheating unclaimed life insurance policies is only triggered by a claim being filed pursuant to the terms of their contracts. (*Connecticut Mut. Life Ins. Co. v Moore*, 333 US at 547-48.)  Rather, implicit in the insurers' duty to escheat is the insurers' duty to investigate whether their insureds are dead.  The ADFD mentioned the Security Administration's Death Master File (DMF) in this context as an example ("such as") of what the insurers could have used as a source of such information.  (*Total Asset Recovery Servs. LLC*, 189 AD3d at 522 [NYSCEF 171 at 5].)  That New York enacted regulations in 2012 (NYSCEF 19 April 23, 2012 Press Release) requiring insurers to check the DMF does not mean the DMF could not be a source of information before 2012.  Contrary to defendants' contention, the DMF is not off limits for plaintiff's claim.

[4] Plaintiff filed its third amended complaint and subsequently filed this fourth amended complaint on consent.  (*See* NYSCEF 256, Stipulation at 1.)

**115336/2010  TOTAL ASSET RECOVERY vs. METLIFE, INC.**
**Motion No.  014 015**

**Page 4 of 17**

(*Compare* NYSCEF 26, Second Amended Complaint[5] ¶¶ 1-95, *with* NYSCEF 254, 4AC[6] ¶¶ 1-91.)  Plaintiff's purported individualized allegations are separated into nine causes of action, each directed at one of nine defendant groups – Genworth, MetLife, Prudential, AXA, Guardian, John Hancock, MassMutual, New York Life, and TIAA. Each of these defendant groups includes several defendants,[7] as well as each defendants' subsidiaries and affiliates.  (*See* NYSCEF 254, 4AC at 2-3/160, 116-160/160 [listing subsidiaries of several defendants]; *id.* ¶ 23.)  Thus, plaintiff's individualized factual allegations are made as to several related defendant entities called "[defendant] group."  Plaintiff repeated substantially the same allegations, with minimal variations, as to each of the nine defendant groups in paragraphs 93 through 353 of the fourth amended complaint.[8]  Plaintiff alleges haphazard recordkeeping amounting to reckless disregard of truth or falsity of reports and facts evidencing actual knowledge of falsity.  Specifically, plaintiff alleges that defendants' records listed incorrect names, dates of birth, and/or social security numbers, or omitted the same. (*See* NYSCEF 254, 4AC ¶¶ 95, 97, 99 [MetLife Group], 127, 129, 131 [AXA group], 159, 161, 163 [Prudential Group], 190, 192, 194-195 [Genworth Group], 222, 224, 226 [Guardian Group], 250, 252, 254-255 [John Hancock Group], 282, 286, 287 [MassMutual Group], 307, 311, 312 [New York Life Group], 338, 339 [TIAA Group].)

---

[5] The Second amended Complaint consists of 30 pages with 97 paragraphs and Exhibits A through D 44 pages listing defendants' subsidiaries.

[6] The 4AC consists of 113 pages, 353 paragraphs not including subparagraphs, and Exhibit A and Exhibits B-D providing more detail about subsidiaries e.g. locations.

[7] MassMutual Life Group along with its affiliates and subsidiaries is the only single defendant "group."

[8] Plaintiff fails to attach a red-line copy of the fourth amended 161-page complaint, which would identify all modifications and additions.  (*See* Part 48 Procedures ¶ 11 [updated April 2023].)

**115336/2010   TOTAL ASSET RECOVERY vs. METLIFE, INC.**
**Motion No.  014 015**

**Page 5 of 17**

Omitting birth dates profoundly impacts the insurers' ability to escheat when the insured reaches their limiting age set forth in the policy. Plaintiff expanded on its nine paragraphs in the Second Amended Complaint asserting false claims for failing to escheat policy proceeds arising from the limiting age set forth in the policy to 49 paragraphs, albeit identical for each defendant. (NYSCEF 254, 4AC, ¶¶107, 138, 171, 201, 233, 262, 291 and 319.) As to each defendant, plaintiff also alleges facts in support of defendants' actual knowledge of insureds' deaths, e.g. paying annuity death benefits but failing to pay or escheat death benefit on the same insured's policies. (*Id.* ¶¶ 105, 137, 169, 200, 232, 260, 317.) Plaintiff added specific policy numbers, insureds' initials, the date of death for each insured connected to the relevant policy and compared it to defendants' holder reports filed with the state on which such deaths should have been reported but were not. (*Id.* ¶¶ 118-120, 122-124 [MetLife Group], 149-153, 155 [AXA Group], 182-185, 187 [Prudential Group], 212-214, 216-219 [Genworth Group], 244-245, 247 [Guardian Group], 273-277, 279 [John Hancock Group], 301-304 [MassMutual Group], 330-333, 335-336, [New York Life Group], 351-353 [TIAA-CREF].) Plaintiff also added a chart for each defendant showing the number of death benefits escheated from 2010 to 2015 which shows a spike after the law changed in 2012. (*Id.* ¶¶ 114 ["Metropolitan Life"], 145 ["AXA Equitable"], 178 ["Prudential Insurance"], 208 ["Genworth Life"],[9] 240 ["Guardian Life Insurance Company Group"], 269 ["John Hancock (USA)"], 298 ["MassMutual Life Insurance Company"], 326 ["New York Life Group"].)

---

[9] There is a minimal spike for Genworth on the chart because the number of policies that Genworth escheats in its holder submission is about the same number annually. (NYSCEF 273 4AC ¶208.)

**115336/2010 TOTAL ASSET RECOVERY vs. METLIFE, INC.**
**Motion No. 014 015**

**Discussion**

On a CPLR 3211 (a) (1) motion to dismiss, the movant has the "burden of showing that the relied upon documentary evidence resolves all factual issues as a matter of law, and conclusively disposes of the plaintiff's claim." (*Fortis Fin. Servs. v Filmat Futures USA*, 290 AD2d 383, 383 [1st Dept 2002] [internal quotation marks and citation omitted].) "A cause of action may be dismissed under CPLR 3211(a)(1) only where the documentary evidence utterly refutes [the] plaintiff's factual allegations, conclusively establishing a defense as a matter of law." (*Art and Fashion Group Corp. v Cyclops Prod., Inc.*, 120 AD3d 436, 438 [1st Dept 2014] [internal quotation marks and citation omitted].)

On a CPLR 3211 (a) (7) motion to dismiss, the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994] [citation omitted].) "[B]are legal conclusions, as well as factual claims which are either inherently incredible or flatly contradicted by documentary evidence" cannot survive a motion to dismiss. (*Summit Solomon & Feldesman v Lacher*, 212 AD2d 487, 487 [1st Dept 1995] [citation omitted].)

"[A]ny person who ... knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state or a local government ... shall be liable to the state or a local government." (State Finance Law § 189[1][g].)

"While the typical NYFCA claim involves the State paying out money on account of a false claim, a reverse false claim occurs when someone uses a false record to conceal or avoid an obligation to pay the government .... To allege a reverse false claim, a plaintiff must state facts tending to show: (1) that the defendant

**115336/2010  TOTAL ASSET RECOVERY vs. METLIFE, INC.**
**Motion No.  014 015**

**Page 7 of 17**

made, used, or caused to be used a record or statement to conceal, avoid, or decrease an obligation to the government; (2) that the statement or record was false; (3) that the defendant knew that the statement or record was false; and (4) that the state suffered damages as a result .... Stated differently, [a] defendant knowingly makes a false claim under the NYFCA if the defendant had actual knowledge of the falsity of the claim or acted in deliberate ignorance or reckless disregard of its truth or falsity." (*Total Asset Recovery Servs. LLC*, 189 AD3d at 521-22 [internal quotation marks and citations omitted] [NYSCEF 171 at 4].)

Further, to plead a reverse false claim, plaintiff must allege knowledge of falsity

of a relevant statement. As to scienter, the ADFD held that:

"plaintiff adequately alleged that defendants knowingly filed false reports with the State which failed to identify escheatable life insurance proceeds. The complaint alleges that defendants' recordkeeping was so haphazard – such as listing incorrect names, dates of birth, and Social Security numbers, or omitting one or more of those pieces of information altogether – that it amounted to reckless disregard for the truth or falsity of the reports that they submitted to the State (*see* State Finance Law § 188[3][a][iii]). In other circumstances, according to the complaint, defendants had actual knowledge that a policyholder was deceased, as evidenced by returned mail, customer call service logs, or demutualization payments separately escheated to the State, yet defendants nevertheless failed to disclose or escheat the deceased policyholder's life insurance proceeds to the State (*see* State Finance Law § 188[3][a][i]). These allegations, if true, demonstrate that defendants 'deliberately turn[ed] a blind eye to reporting errors and then attest[ed] that, to [their] knowledge, they d[id] not exist' (*United States v United Healthcare Ins. Co.*, 848 F 3d 1161, 1179 [9th Cir 2016])." (*Total Asset Recovery Servs. LLC*, 189 AD3d at 522-23 [citations omitted] [NYSCEF 171 at 5-6].)

Although a reverse false claim must be stated with particularity (*State of NY ex*

*rel. Seiden v Utica First Ins. Co.*, 96 AD3d 67, 72 [1st Dept 2012], *lv denied* 19 NY3d

810 [2012]),

"the qui tam plaintiff shall not be required to identify specific claims that result from an alleged course of misconduct, or any specific records or statements used, if the facts alleged in the complaint, if ultimately proven true, would provide a reasonable indication that one or more violations of section one hundred eighty-nine of this article are likely to have occurred, and if the allegations in the pleading provide adequate notice of the specific nature of the alleged misconduct to permit the state ... effectively to investigate and defendants fairly to defend the allegations made." (State Finance Law § 192[1-a].)

115336/2010 TOTAL ASSET RECOVERY vs. METLIFE, INC.
Motion No. 014 015

Page 8 of 17

Pursuant to the Abandoned Property Law, "[o]n or before the first day of April in each year every life insurance corporation shall make a verified written report to the state comptroller, which shall contain a true and accurate statement ... of all abandoned property ... held and owing by it." (Abandoned Property Law § 701[1].)[10] Abandoned property includes (i) "[a]ny moneys held or owing by any life insurance corporation due to beneficiaries or other persons entitled thereto under policies on the lives of persons who have died ... which moneys shall have remained unclaimed by the person or persons entitled thereto for three years" and (ii) "[a]ny moneys held or owing by any life insurance corporation which are payable under other kinds of life insurance policies to any person ... if living, would have attained the limiting age under the mortality table on which the reserves are based ...." (Abandoned Property Law § 700[1][b]-[c].) Life insurance companies are required to escheat unclaimed life insurance benefits to the State. (See Abandoned Property Law § 703[1].)

Accordingly,

"if a life insurer files a false report with the State certifying that it has no abandoned property, within the meaning of Abandoned Property Law § 700, to escheat in a given year, and has the requisite level knowledge, within the meaning of State Finance Law § 188(3)(a), as to the falsity of that report, then the filing of that false report may properly serve as the basis for a NYFCA claim." (*Total Asset Recovery Servs. LLC*, 189 AD3d at 522 [citations omitted] [NYSCEF 171 at 5].)

The parties dispute the meaning of the ADFD's decision: what did the ADFD direct plaintiff to amend? Plaintiff contends that the ADFD directed plaintiff to simply repeat its scienter allegations, which the ADFD has already deemed sufficient, against

---

[10] Section 701 of Abandoned Property Law was repealed effective March 31, 2011. (*See* L.2011, c. 61, pt. A, § 7.)

**115336/2010  TOTAL ASSET RECOVERY vs. METLIFE, INC.**
**Motion No.  014 015**

**Page 9 of 17**

[* 9]

each defendant. Defendants object to plaintiff copying and pasting the same allegations nine times, directing the identical allegations against each defendant collectively with their subsidiaries. For example, defendants complain there are no particularized wrongdoing allegations as to Genworth Financial and Genworth Life. Instead, plaintiff alleges that "Genworth Group knowingly made, used, or caused to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money to the Comptroller, all in violation of New York State Finance Law Section 189(1)(g) and New York Abandoned Property Law." (NYSCEF 254, 4AC ¶ 210.) Defendants contend that plaintiff failed to add any particularized allegations. This court reads the ADFD's decision to mean what it says: using the "trove of data [11] that plaintiff alleges to have amassed over the past several years," plaintiff shall amend the complaint and state "which defendants engaged in what conduct that gives rise to liability under NYFCA." (*Total Asset Recovery Servs. LLC*, 189 AD3d at 523 [citations omitted] [NYSCEF 173 at 7.) Again, "[t]o allege a reverse false claim, a plaintiff must state facts tending to show: (1) that the defendant made, used, or caused to be used a record or statement to conceal, avoid, or decrease an obligation to the government; (2)

---

[11] Plaintiff never specifically identifies the contents of the "trove" of data. Whatever it is, plaintiff alleges that the Office of the Attorney General (OAG) called upon plaintiff for its expertise to process and analyze the data (NYSCEF 254, 4AC ¶¶ 64-68) and plaintiff executed a confidentiality agreement to have access to the data. Implicit in the complaint, plaintiff has access to policy information on spreadsheets from defendants not policies (NYSCEF 310, tr 42:3-8), annual holder reports filed by defendants (front pages only) (*Id.* tr 42:9-23), and responses to the State of New York's Insurance Department's requests to defendants for special reports pursuant to Insurance Law §308. (*Id.* ¶¶ 117, 118-120, 122-124 [MetLife Group], 149-153, 155 [AXA Group], 182-185, 187 [Prudential Group], 212-214, 216-219 [Genworth Group], 244-245, 247 [Guardian Group], 273-277, 279 [John Hancock Group], 301-304 [MassMutual Group], 330-333, 335-336, [New York Life Group], 351-353 [TIAA-CREF].)

**115336/2010 TOTAL ASSET RECOVERY vs. METLIFE, INC.**
**Motion No. 014 015**

that the statement or record was false; (3) that the defendant knew that the statement or record was false; and (4) that the state suffered damages as a result." (*Total Asset Recovery Servs. LLC*, 189 AD3d at 523 [NYSCEF 171 at 6].)

There is no conflict between the heightened pleading standard for fraud and State Finance Law § 192(1)(a). Section "192 (1-a) does not relieve a *qui tam* plaintiff of an obligation to plead facts with particularity it only relieves the plaintiff of an obligation to identify specific claims that result from an alleged course of misconduct."[12] (NYSCEF 135, Decision and Order at 25/27 [mot. seq. nos. 001, 002, 003, 004, 005, 009] [internal quotation marks and citation omitted].)

## Knowledge of Falsity (3)

Defendants challenge plaintiffs' handful of policy examples for each defendant as "anomalies" because the insurers have millions and millions of policies, "no company has perfect records" and everyone makes mistakes. (NYSCEF 310, tr at 10:13, 11:4-5, 14:3.) Plaintiff alleges a course of conduct of missing or incorrect social security numbers, birth dates, and insureds' names, an sometimes all of the above. (*See e.g.* NYSCEF 254, 4AC ¶¶ 249-250, 252-255 [John Hancock Group].) Plaintiff includes policy examples in support its contention that the insurers knew insureds were dead when defendants submitted their annual holder reports without escheating the dead insured's proceeds. For example, plaintiff asserts identical allegations as to each defendant that they had mail marked "return to sender" or phone logs of calls giving notices of insureds' deaths. (*Id.* ¶¶ 86 [all defendants], 108[a] [MetLife Group], 172[a] [Prudential Group], 234[a] [Guardian Group], 263[a] [John Hancock Group], 292[a]

---

[12] This aspect of the court's decision remained intact by the ADFD's decision.

**115336/2010  TOTAL ASSET RECOVERY vs. METLIFE, INC.**                    **Page 11 of 17**
**Motion No.  014 015**

[Mass Mutual Group], 320[a] [New York Life Group].) However, the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." (*Leon*, 84 NY2d at 87-88 [citation omitted].) These allegations, if true, demonstrate that defendants "deliberately turn[ed] a blind eye to reporting errors and then attest[ed] that, to [their] knowledge, they d[id] not exist." (*Untied States v United Healthcare Ins. Co.*, 848 F3d 1161, 1179 [9th Cir 2016]).

Defendants' drop in the bucket argument goes to sufficiency, not whether plaintiff stated a claim. Moreover, plaintiff is not required to "identify specific claims that result from an alleged course of conduct, or any specific records or statements used." (State Finance Law § 192[1-a].) The court finds that plaintiff has sufficiently pled knowledge of falsity. The combination of the ADFD's decision and plaintiff's policy examples matched to holder reports is sufficient to give plaintiff the benefit of the inference that defendants' errors are not merely mistakes. (State Finance Law § 188[3][b] ["[A]cts occurring by mistake or as a result of mere negligence are not covered by this article"]; *People v Starbucks Corp.*, 60 Misc 3d 204, 212 [Sup Ct, NY County 2018] ["The purpose of the [NYFCA] scienter requirement is to avoid punishing honest mistakes or incorrect claims submitted through mere negligence" (internal quotation marks and citation omitted)].)

Similarly, defendants object that only 13 of the listed policies are escheatable in New York because only those 13 insureds had addresses in New York. However, "the qui tam plaintiff shall not be required to identify specific [false] claims that result from an alleged course of misconduct, or any specific records or statements used." Moreover, given plaintiff's extensive allegations that defendants' records are severely lacking,

115336/2010   TOTAL ASSET RECOVERY vs. METLIFE, INC.                    Page 12 of 17
Motion No. 014 015

12 of 17

[* 12]

plaintiff is entitled to an inference that some insureds' policies would escheat to New York. (*Leon*, 84 NY2d at 87-88.) The court rejects defendants' argument that 13 is not a sufficient start for plaintiff's complaint to proceed.

Defendants object that plaintiff has not identified a life insurance policy that was not timely escheated because of poor record keeping. Instead, for its individual policy allegations, plaintiff relies on defendants' use of the DMF for the purposes of stopping annuity payments where it benefitted defendants, but not for the same insureds' life insurance where such death would trigger a payment from defendants. Defendants declare that scienter cannot be based on the use of the DMF but fail to explain why. Presumably because in 2012, New York explicitly mandated that insurers use the list (*see* NYSCEF 135, Decision and Order at 22/27 [mot. seq. nos. 001, 002, 003, 004, 005, 009]), but that does not preclude insurers from using the DMF before 2012. Indeed, the ADFD specifically referenced the DMF as an example of a viable source of information for insurers to satisfy their duty to escheat implicit in which is a duty to investigate. The ADFD also recognized that pervasive record keeping problems could support recklessness as well, not instead. Whether it rises to the level of recklessness is a factual weight issue, not something to be decided on a motion to dismiss. The court finds that plaintiff has sufficiently pled scienter because the complaint provides "adequate notice of the specific nature of the alleged misconduct to permit the state or a local government effectively to investigate and defendants fairly to defend the allegations made." (State Finance Law § 192[1-a].)

**115336/2010  TOTAL ASSET RECOVERY vs. METLIFE, INC.**
**Motion No.  014 015**

**Page 13 of 17**

13 of 17

[* 13]

**False Reports Filed (2)**

Plaintiff's graphs for each defendants show a significant increase in benefits escheated in 2013 compared to prior years. Beginning in 2012, New York required insurers to use the DMF. (NYSCEF 19 April 23, 2012 Press Release.) Implicit in the exponential increase is that the insurer's prior reports were false because they were not escheating proceeds from life insurance policies for insureds who had died during the relevant term. Defendants argue that the dramatic increases in the death benefits defendants escheated, except for Genworth, are unremarkable and simply illustrate the change in the law. The court finds that the graphs illustrate plaintiff's contention that defendants were not disclosing on their annual holder reports death benefits that that should have been escheated and thus filing false holder reports. These graphs suggest that defendants may have turned a "blind eye" to these deaths. (*Total Asset Recovery Servs. LLC*, 189 AD3d at 523 [NYSCEF 171 at 6].) They also support plaintiff's contention that defendants understood the materiality of the failure to timely escheat. While plaintiff has not satisfied this element using the graph for Genworth, plaintiff's other allegations that false reports were filed because defendants checked the DMF to stop annuity payments, but not life insurance policies.

**Defendants made Statements to Conceal, Avoid or Decrease an Obligation to the Government (1)**

Plaintiff admittedly has not alleged particularized allegations against individual defendants. Instead, plaintiff creates nine groups which include defendants' subsidiaries and affiliates whose names and locations appear in exhibits to the fourth amended complaint. Defendants argue such pleading is fatal to the complaint because these allegations are made as to each defendant collectively, and thus also constitute

**115336/2010 TOTAL ASSET RECOVERY vs. METLIFE, INC.** <span style="float:right">**Page 14 of 17**</span>
**Motion No. 014 015**

impermissible group pleading.  (*See generally Concord Assoc., L.P. v Entertainment Properties Tr.*, 2014 WL 1396524, \*24, 2013 US Dist LEXIS 186964, \*73-74 [SD NY, Apr. 9, 2014, No. 12 CIV 1667 ER] [stating that "[g]roup pleading, by which allegations are made against families of affiliated entities is simply insufficient to withstand review on a motion to dismiss" and collecting cases], *affd* 817 F3d 46 [2d Cir 2016].)

In opposition, plaintiff submits an affidavit of Morgan McCollum, its attorney who reviewed the "trove" of documents in plaintiff's possession (NYSCEF 292, McCollum aff ¶¶ 1, 5) who avers that (i) in response to a subpoena, nonparty Genworth North America Corporation, for example, produced three reports that name Genworth Life and two subsidiaries of Genworth Financial as holders of abandoned property (*id.* ¶¶ 38-39), and that (ii) the reports' verification pages "do not indicate what legal entity is actually doing the work of preparing the [reports] and verifying its accuracy and completeness." (*Id.* ¶ 40.)  Specifically, the verification pages are signed by the one individual with a title of "Unclaimed Property Manager," list the individual as a contact person and list same address of "Unclaimed Property Unit" for the property holders.  (*Id.* ¶ 41.)  The entity employing the individual and operating the unit is not specified.  (*Id.*)[13]

"[A]ffidavits may be received for a limited purpose only, serving normally to remedy defects in the complaint." (*Rovello v Orofino Realty Co.*, 40 NY2d 633, 636 [1976].)  Plaintiff proffers the affidavit not to remedy the complaint's pleading defects, but to explain plaintiff's failure to plead with any specificity "which defendants engaged in what conduct that gives rise to liability under NYFCA." (*Total Asset Recovery Servs. LLC*, 189 AD3d at 523 [NYSCEF 171 at 6].)  Here, the affiant explains that the top page

---

[13] This analysis is the same for all nine defendant groups.

**115336/2010   TOTAL ASSET RECOVERY vs. METLIFE, INC.**                              **Page 15 of 17**
**Motion No.  014 015**

of the holder reports in plaintiff's possession do not disclose which defendants or their affiliates or subsidiaries filed the holder reports with New York. "[S]ection 3016 (b) should not be so strictly interpreted as to prevent an otherwise valid cause of action in situations where it may be impossible to state in detail the circumstances constituting a fraud." (*Pludeman v N. Leasing Sys., Inc.*, 10 NY3d 486, 491 [2008] [internal quotation marks and citations omitted].) Therefore, the court accepts that plaintiff has not alleged wrongful conduct against each defendant and each of their affiliates and subsidiaries because it is not stated on the holder reports but it is peculiarly within defendants' knowledge, to allow this action to proceed with group allegations on this issue only at this stage.

## Damages (4)

If successful, plaintiffs would be entitled to treble damages for the amount of death benefits that defendants failed to escheat and for those death benefits that defendants failed to timely escheat. Defendants do not challenge plaintiff's damage allegations.

> "The reluctance of courts to permit qui tam relators to use discovery to meet the requirements of Rule 9(b) reflects, in part, a concern that a qui tam plaintiff, who has suffered no injury in fact, may be particularly likely to file suit as a pretext to uncover unknown wrongs." "When a plaintiff does not specifically plead the minimum elements of [his] allegation, it enables [the plaintiff] to learn the complaint's bare essentials through discovery and may needlessly harm a defendant['s] goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are [sic] baseless allegations used to extract settlements." Moreover, allowing a *qui tam* relator to amend his or her complaint after conducting discovery would mean that "the government will have been compelled to decide whether or not to intervene absent complete information about the relator's cause of action." (*U.S. ex rel. Polansky v Pfizer, Inc.*, 04-CV-0704 (ERK), 2009 WL 1456582, *10 [EDNY May 22, 2009].)

**115336/2010   TOTAL ASSET RECOVERY vs. METLIFE, INC.**
**Motion No.  014 015**

**Page 16 of 17**

16 of 17

This court has no such concern here as the OAG and plaintiff have together investigated this claim for years and amassed a "trove" of data. While the court wishes plaintiff had disclosed more of that data instead of compilations, the court finds that the pleading requirements of State Finance Law 192[1-a] are satisfied.

The court has considered the parties' remaining arguments and finds that they do not affect the outcome.

Accordingly, motion sequence 014 and 015 are denied with the exception of Genworth.

Accordingly, it is

ORDERED that defendants' motions 014 and 015 to dismiss the fourth amended complaint are denied. Parties shall submit a proposed PC order by October 29, 2024 at 5 pm or competing proposed PCs if the parties cannot agree.

202410132424427AMASLEY09F6D13570414988A2B00E5CA88D28E2

| 10/13/2024 | | | | |
|---|---|---|---|---|
| **DATE** | | | **ANDREA MASLEY, J.S.C.** | |
| CHECK ONE: | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | |
| | ☐ GRANTED | ☒ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**115336/2010   TOTAL ASSET RECOVERY vs. METLIFE, INC.**
**Motion No.  014 015**

Page 17 of 17

[* 17]